FARRELL v AUTOMOBILE CLUB OF MICHIGAN (ON REMAND)

Docket No. 124209. Submitted December 26, 1989, at Lansing. Decided October 25, 1990; approved for publication January 16, 1991, at 9:10 A.M.

Bruce Farrell brought an action for wrongful discharge in the Kent Circuit Court against the Automobile Club of Michigan, alleging that the termination of his employment as a sales representative was both a breach of an express agreement based on an oral promise by his supervisors and a breach of the implied contract of employment which arose out of the legitimate expectations he formed from the policies implemented by the defendant. Following a jury trial, the court, George R. Cook, J., denied the defendant's motions for judgment notwithstanding the verdict, a new trial, or remittitur and entered judgment on the jury's award of $150,000. The Court of Appeals affirmed the finding of liability, but remanded for reduction to present value the award of future damages. 155 Mich App 378 (1986). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for reconsideration in light of *Bullock v Automobile Club of Michigan*, 432 Mich 472 (1989), and *In re Certified Question, Bankey v Storer Broadcasting Co*, 432 Mich 438 (1989). 433 Mich 913 (1989).

On remand, the Court of Appeals *held*:

An employment contract providing that an employee may not be discharged except for good cause may be established either by oral or written express agreement or as a result of the employee's legitimate expectations grounded in an employer's policy statements. The plaintiff's claim in this case includes both express-agreement and legitimate-expectations aspects. Thus, because neither the trial court nor the Court of Appeals in its earlier decision, analyzed these theories separately, and because the trial court's instructions to the jury failed to differentiate between these theories, the initial jury verdict must be set aside and a new trial held. Upon retrial, the jury

REFERENCES

Am Jur 2d, Master and Servant §§ 27, 32, 33, 37, 43, 45, 67.

See the Index to Annotations under Discharge from Employment or Office.

must be instructed separately with respect to both the express-agreement and legitimate-expectations aspects of the plaintiff's claim.

1. The legitimate expectations of an employee formed as a result of employment policies adopted by the employer may create an enforceable contractual right; however, the employer, in the absence of an express reservation to the contract, may unilaterally modify its employment policies. A modified employment policy is legally effective if the employee is given reasonable notice of the change and the change is not made in bad faith. In this case, the legal effect of the policy change is dependent upon resolution of unresolved questions of fact regarding the manner in which the change was made.

2. There was sufficient evidence to create questions of fact regarding whether there was an express agreement, whether the defendant's quota system constituted an offer to modify contrary terms of the express agreement, and whether the plaintiff accepted without protest.

Reversed and remanded for a new trial.

MASTER AND SERVANT — WRONGFUL DISCHARGE — JURY INSTRUCTIONS — LEGITIMATE EXPECTATIONS — EXPRESS CONTRACTS.

An employment contract providing that an employee may not be discharged except for good cause may be established either by oral or written express agreement or as a result of the employee's legitimate expectations grounded in an employer's policy statements; in a wrongful discharge action in which the employee claims that discharge could have been had for good cause only and the employer claims that the employment was terminable at will, instruction of the jury must clearly differentiate between claims based on legitimate expectations and claims based on an express agreement.

*Schenk, Boncher & Prasher* (by *Gary P. Schenk* and *Fred D. Hartley*), for the plaintiff.

*Fox & Grove* (by *Kalvin M. Grove* and *Steven L. Gillman*), and *Finkel, Whitehead & Selik* (by *Robert J. Finkel*), for the defendant.

ON REMAND

Before: MAHER, P.J., and SAWYER and WEAVER, JJ.

Per Curiam. This matter is before us on remand from our Supreme Court for reconsideration in light of *In re Certified Question, Bankey v Storer Broadcasting Co,* 432 Mich 438; 443 NW2d 112 (1989), and *Bullock v Automobile Club of Michigan,* 432 Mich 472; 444 NW2d 114 (1989). The parties filed supplemental briefs, and oral argument again was held. Previously, we affirmed a jury verdict in favor of plaintiff, but remanded for adjustment of damages. *Farrell v Automobile Club of Michigan,* 155 Mich App 378; 399 NW2d 531 (1986). Upon reconsideration, we reverse and remand for a new trial.

Plaintiff, who had been employed by defendant as a sales representative in Grand Rapids and compensated by commissions since October 1976, commenced this breach of contract action, alleging that his termination on May 21, 1982, for failure to fulfill the requirements of a minimum production level imposed in September 1981 was without good cause because an employment contract had been established in which defendant agreed not to impose enforceable minimum production levels on him. As reported in our prior decision, plaintiff relied on four pieces of evidence to support his claim that such a contract had been established:

> The first piece of evidence consisted of the parties' stipulation that prior to 1981 defendant had not enforced any sales quotas on its sales representatives and had not dismissed or demoted any of its sales representatives for failure to achieve quotas or production standards. Secondly, plaintiff presented evidence that his branch manager, Mr. Fennech, had informed him at the time he was hired that his responsibility was to sell some insurance and to make his "book" of insurance grow. According to plaintiff, Fennech told him at the time of his hiring that he need only handle his

book of business, sell some insurance and he would be set financially for the rest of his life if he worked at it for three or four years. Thirdly, plaintiff established at trial that at the time of his hiring Fennech handed him a Sales Rules Manual which provided that he was required to sell some insurance as a condition of continued employment, but which did not refer to a quota or minimum level of sales that he was required to meet. Plaintiff testified that the only requirements imposed by the Manual were that he produce some new business, memberships and insurance. Finally, plaintiff also presented evidence to the effect that at the time defendant's employee union in Detroit was negotiating with defendant, regarding a new contract with defendant which included minimum sales production requirements, the regional manager, Mike Mallott, informed plaintiff that he need not be concerned about the union contract because it would not apply to the Grand Rapids employees. According to plaintiff, Mallott told him that if the union contract contained something better than what the employees currently had, the Grand Rapids employees would also be benefitted, but if it contained something worse, it would not affect them. [*Id.*, pp 383-384.]

Defendant contends that it had a legal right to impose additional requirements on its employees as a condition of continued employment, that its imposition of a minimum production level in September 1981 constituted a valid term of plaintiff's employment contract, and that plaintiff properly could be discharged for failing to comply with the new requirement. *Farrell*, pp 381-382.

In *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 598; 292 NW2d 880 (1980), our Supreme Court held that an employment contract providing that an employee may not be discharged except for good cause may be established in alternative ways, "either by express

agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements."

The differences between these alternative theories (legitimate expectations versus express agreement), including the right of an employer to unilaterally modify an employment relationship through policy changes, was discussed in *Bullock* and *In re Certified Question.* Indeed, *Bullock* noted that prior decisions had done little to clarify the relationship between these two theories. *Id.,* p 479, n 7.

In the instant case, both parties agree that plaintiff's claim includes both express-agreement and legitimate-expectations aspects. The policy-based legitimate-expectations aspect of plaintiff's claim is reflected in his asserted reliance on the provisions of defendant's sales manual, as well as defendant's failure to enforce any sales quotas prior to 1981. The express agreement aspect of plaintiff's claim is based upon the oral statements of both Fennech and Mallott. In neither the trial court nor in our prior decision were these two theories analyzed separately. Accordingly, in light of *Bullock* and *In re Certified Question,* we do so now.

### THE LEGITIMATE-EXPECTATIONS CLAIM

To the extent that an employee's relationship with his employer is controlled by his policy-based legitimate expectations, the Supreme Court has made clear in *In re Certified Question* that an employer may, without an express reservation of the right to do so, modify the employment relationship through unilaterally imposed policy changes so as to change a discharge-for-cause relationship to one of termination at will. *Id.,* p 441.

Thus, we find in this case that, with respect to the legitimate-expectations aspect of plaintiff's claim, defendant had a legal right to modify the employment relationship through the unilateral adoption of its policy requiring adherence to minimum production levels. Nevertheless, this right is not without limitations, and, in this case, we conclude that the legal effect of the policy change is dependent on resolution of unresolved factual issues which remain concerning the manner in which the change was instituted by defendant.

First, as the Court stated in *In re Certified Question, supra,* p 457, "to become legally effective, reasonable notice of the change must be uniformly given to affected employees." In this case, one week's notice was provided prior to the institution of enforceable minimum sales levels. Considering the nature of the change, we agree with plaintiff that the question whether "reasonable notice" was given is one for the jury.

Second, the Supreme Court also cautioned against the assumption that its holding would be applicable to bad-faith policy changes. *Id.,* pp 456-457. Considering plaintiff's suggestion throughout this matter that the quota system was instituted in response to employee unionizing activity, and also, as a means of forcing commission-based salesmen into potentially less lucrative positions as salary-based "member-advisors," the question whether defendant enacted its policy change in good faith is also one for the jury.

### THE EXPRESS-CONTRACT CLAIM

As previously discussed, plaintiff also claims to have had an express agreement with defendant that any minimum sales quotas would not be enforced against him. Initially, we disagree with

defendant that there was insufficient evidence of an express contract to submit this claim to a jury.

In making this argument, defendant first contends that the Fennech and Mallott statements were too indefinite as a matter of law to create an express oral contract. We disagree.

In *Bullock, supra,* pp 480-481, the Court noted that in *Toussaint* and its companion case, *Ebling v Masco Corp,* the testimony concerning promises by the defendants' corporate officers that the plaintiffs would not be discharged as long as they were doing their job had been held to be sufficient to justify submitting to a jury the issue whether an express agreement existed. We further note that in *Bullock* an express agreement was alleged on the basis of statements similar to those made in this case. See *Id.,* pp 475-476. Concerning these statements, Justice LEVIN stated in his separate opinion:

> Nor did the oral statements made to Bullock at the time of hiring necessarily lack the definiteness required to form a binding contract as a matter of law. Oral statements may be as binding as written statements. [*Id.,* p 501.]
>
> It is suggested that the expressions relied on by Bullock were not " 'clear and unequivocal.' " . . .
>
> [T]here is no rule of law requiring that a contract that need not be in writing be more specific or clear and less equivocal when it is oral than when it is in writing. [*Id.,* pp 508-509.]

The testimony in this case described promises that were no less definite than those statements referred to above. Accordingly, we similarly conclude that the testimony was sufficient to justify submitting to a jury the issue whether an express agreement existed.

Defendant further argues that Fennech's and

Mallott's statements were improperly considered by the jury because they were made without authority, not based upon sufficient consideration, or void under the statute of frauds. These same arguments were raised, discussed, and rejected in our prior decision, in which we concluded that defendant's arguments were largely factual and that sufficient evidence had been presented by plaintiff to establish that reasonable minds could differ concerning the factual disputes. See *Farrell, supra,* pp 384-386. Because those issues were not addressed either in *In re Certified Question* or *Bullock,* we conclude that our prior resolution of them remains unaffected.

Having decided that sufficient evidence was presented to enable the jury to find an express agreement, our attention now shifts to consideration of the effect of defendant's unilateral adoption of minimum sales quotas to the extent that the adoption conflicts with the terms of any express agreement found to exist. The ability of an employer to modify, through generally applicable policy changes, contract terms controlled by an express agreement was only briefly touched upon in *Bullock.*

As discussed in *Bullock, supra,* pp 481-482, amendment of an employer's generally applicable policies will not necessarily modify a prior express agreement:

> Likewise, it cannot be said that where an express agreement is alleged preceding an employment manual, the alleged promise is, as a matter of law, unenforceable.
>
> . . . [*In re Certified Question*] does not establish that amendments to employment manuals must be construed to be modifications of a distinct, express, or implied-in-fact contract.

However, *Bullock* did recognize that policy amendments could be construed as an "offer to modify" contrary terms of a prior express agreement. *Id.,* p 483. Citing *Bullock,* defendant argues that its imposition of a policy requiring adherence to minimum sales levels constituted an offer to modify any contrary express agreement alleged by plaintiff and that acceptance of this offer was manifested where plaintiff "clearly continued employment thereafter, without protest." We cannot accept this argument, however, because we conclude from our review of the record that a sufficient factual dispute existed concerning whether plaintiff's continued employment was "without protest." Moreover, we agree with plaintiff that acceptance cannot be presumed from the mere fact of continued employment; otherwise, how would such an offer ever be rejected, absent one leaving employment? Rather, to the extent defendant's policy change constituted an offer to modify contrary terms of a prior express agreement, the question whether plaintiff accepted such an offer must be determined from the acts and circumstances of the parties, including their written or spoken words or by other acts or conduct. *Ludowici-Celadon Co v McKinley,* 307 Mich 149, 153; 11 NW2d 839 (1943).

Accordingly, to the extent that a contrary express agreement is found to have been established, it is up to the factfinder to further determine whether the agreement was subsequently modified by virtue of an acceptance, on plaintiff's part, of defendant's policy-based "offer to modify."

CONCLUSION

A primary area of dispute in both the lower court and in the parties' initial appeal concerned the instructions to the jury. The jury instructions

in this case failed to differentiate between plaintiff's separate express-agreement and legitimate-expectations theories. While traditional contract-forming mechanisms such as mutual assent or individual detrimental reliance need not be present to establish contractual rights under a legitimate-expectations theory, *Toussaint, supra,* pp 614-615; *In re Certified Question, supra,* p 454, the same is not true for those rights asserted under an express agreement. Further, the employer's ability to modify those rights determined to have been established also differs under the two theories.

In light of the differences with respect to both the formation and modification of contractual rights under the two theories, we conclude that the absence of jury instructions appropriately differentiating between them requires that the initial jury verdict be set aside and a new trial held. Upon retrial, the jury must be instructed separately with respect to both the express-agreement and legitimate-expectations aspects of plaintiff's claim in light of both *In re Certified Question* and *Bullock,* as well as this opinion.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.