BARNELL v TAUBMAN COMPANY, INC

Docket No. 135296. Submitted April 15, 1993, at Lansing. Decided December 20, 1993, at 10:00 A.M. Leave to appeal sought.

Charles L. Barnell brought an action in the Oakland Circuit Court against the Taubman Company, Inc., alleging wrongful discharge, age discrimination, and promissory estoppel. Kay Barnell, Charles' wife, brought a derivative claim of loss of consortium. The plaintiffs alleged that Charles Barnell was recruited by the defendant for a new position of vice president of financial services. They further alleged that during his interviews with the chief financial officer, the chief executive officer, and the chief of operations he was assured that his performance would be reviewed and he would be discharged only for failing to perform adequately. The defendant claimed that Charles Barnell's employment was at will and that even if he was not aware of that policy at the time of his employment, he was made aware of it a few months later when a memorandum indicating that all employment was at will was circulated to all employees. The defendant further claimed that Charles Barnell had been discharged for cause. The court, Jessica R. Cooper, J., granted summary disposition for the defendant on the basis that there was no issue of material fact. The plaintiffs appealed.

The Court of Appeals *held:*

1. The plaintiffs alleged that the defendant had made a specific promise that plaintiff Charles Barnell would be discharged only for good cause. Their pleadings were sufficient, if believed by a trier of fact, to establish a contractual basis to overcome the presumption that his employment was at will.

2. Because the plaintiffs alleged an express contractual agreement that the employment would be terminated only for good cause, the defendant could not change unilaterally the nature of the employment relationship. Inasmuch as plaintiff Charles Barnell did not sign the acknowledgment that accompanied the

REFERENCES

Am Jur 2d, Master and Servant §§ 20, 32, 43, 46.

See ALR Index under Discharge from Employment or Office; Labor and Employment.

memorandum that the defendant circulated to its employees relative to the nature of their employment relationship, and there were no other acts of the parties evidencing his assent to a modification of his employment relationship, the memorandum could not modify the alleged express agreement upon which the plaintiffs' claim of wrongful discharge was based. Accordingly, the trial court erred in granting summary disposition for the defendant with respect to the claim of wrongful discharge on the basis that the plaintiffs failed to allege facts sufficient to raise issues of material fact requiring resolution by a trier of fact.

3. Although the plaintiffs' allegations with respect to the claim of age discrimination were sufficient to establish that Charles Barnell was replaced by a younger employee, their allegations failed to rebut the defendant's allegation that his dismissal was because of a difference in management philosophies. Replacement by a younger person without some evidence that age was a determining factor in the dismissal is insufficient to establish a claim of age discrimination. Because the plaintiffs failed to plead that critical factor, the trial court properly granted summary disposition for the defendant with respect to the claim of age discrimination.

4. Plaintiff Charles Barnell's leaving his prior position and moving from Grand Rapids to the Detroit area in order to take the job with the defendant was insufficient to establish the element of reliance needed to establish a claim of promissory estoppel. Although the trial court incorrectly stated that summary disposition for the defendant with respect to the claim of promissory estoppel should be granted on the basis that the claim was nothing more than a restatement of the claim of wrongful discharge, the granting of summary disposition was the correct result, albeit for the wrong reason.

5. The issue argued by the defendant relative to mitigation of damages is not properly before the Court of Appeals, no cross appeal having been filed.

Affirmed in part, reversed in part, and remanded.

CONTRACTS — EMPLOYMENT — DISCHARGE FOR GOOD CAUSE — EX-
    PRESS AGREEMENTS — UNILATERAL MODIFICATION.

An employer that by express agreement promises that an employee will be discharged only for good cause may not convert unilaterally that relationship to employment at will; such a change of the employment relationship requires the assent of the employee.

*Mary Anne M. Helveston,* for the plaintiffs.

*Miro Miro & Weiner* (by *Thomas W. Cranmer* and *Bruce L. Segal*), for the defendant.

Before: WHITE, P.J., and CAVANAGH and JANSEN, JJ.

JANSEN, J. This is a wrongful discharge and age discrimination case. Plaintiffs appeal as of right from an order of the Oakland Circuit Court of November 7, 1990, granting defendant summary disposition pursuant to MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

I

Charles Barnell (hereinafter plaintiff) was employed by Rapistan, a division of Lear Siegler, Inc., from 1971 until 1985. In January 1984, he became vice president of finance at Rapistan. In the spring of 1985, an employment search agency contacted plaintiff and advised him that defendant Taubman Company was seeking to fill a new position of vice president of financial services. The position was designed to assist Gerald Poissant, defendant's chief financial officer. Although plaintiff was not looking to change positions, he agreed to meet with Poissant.

Plaintiff met with Poissant, and one of plaintiff's initial inquiries concerned job security. Plaintiff stated that he was concerned about the stability of the Taubman organization and the security of the position of vice president of financial services, because it was a newly created position. Poissant told plaintiff that he need not be concerned with summary dismissal at the Taubman Company, that he would have the same type of job security that he had at Rapistan, that he would not be

discharged without cause (although he was not certain of the exact words used to convey this message), that the Taubman Company had a process of regular reviews, and that defendant had a performance evaluation system.

Plaintiff next met with Robert Larson, defendant's chief executive officer. Plaintiff related some of the same concerns to Larson. Larson assured plaintiff that there was a system for employee evaluation and that such a system would apply to him.

Plaintiff last met with Robert Taubman, defendant's chief of operations. Taubman assured plaintiff that employees were reviewed and only if they were not performing would they be discharged. Plaintiff accepted the position with the Taubman Company in August 1985.

Defendant claims that the employment application sets forth the company's policy that all employment is at will. However, plaintiff asserts that he never received or saw the document, and the document is not signed by plaintiff.

Approximately eight months after plaintiff began working with defendant, in March 1986, defendant distributed to all employees, including plaintiff, a memorandum stating that all employment was strictly at will. Plaintiff did not sign the acknowledgment form that accompanied the memorandum, but he does not deny receiving the memorandum.

During his tenure with defendant, plaintiff never received a formal evaluation. When he questioned Poissant about this, he was told not to worry and that he would be reviewed the next time. Plaintiff also received a letter from Larson in December 1985 telling him that he had been selected as a key manager to participate in an

incentive compensation program, and he received a similar letter and bonus the following year.

On February 10, 1987, plaintiff's employment was terminated without prior notice. When plaintiff inquired why, he was told that "things weren't working out." There is some indication that an employee whom plaintiff had supervised, Steve Eder, was very unhappy with plaintiff's presence and was very critical of plaintiff. Apparently, Eder had applied for the same position as plaintiff, but obviously was not chosen for the job. Eder complained to Poissant regarding plaintiff's management style. Defendant claims that plaintiff was terminated primarily because of a difference in management philosophies.

Several months after plaintiff's termination, defendant hired Cathleen Knight, a thirty-year-old, to assist Poissant in some of his duties. Plaintiff concedes that his actual position was not filled but that his responsibilities were reorganized.

Plaintiff filed his cause of action alleging wrongful discharge, age discrimination, and promissory estoppel. Plaintiff's wife, Kay Barnell, filed a claim of loss of consortium, a derivative action. Defendant moved for summary disposition of all claims, arguing that plaintiff had failed to create a material factual dispute. The trial court agreed and granted summary disposition to defendant pursuant to MCR 2.116(C)(10).

II

A

Plaintiff's first issue on appeal relates to his wrongful discharge claim. Plaintiff argues that the trial court erred in granting summary disposition because there is a material factual dispute regard-

ing the existence of a just-cause contract. A motion for summary disposition pursuant to MCR 2.116(C)(10) may be granted when, except with regard to the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. Such a motion tests the factual basis of the claim. A court reviewing the motion must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). The party opposing the motion has the burden of showing that a genuine issue of material fact exists. Giving the benefit of reasonable doubt to the nonmovant, the trial court determines whether a record might be developed that would leave open an issue upon which reasonable minds might differ. The court may not make factual findings or weigh credibility in deciding a motion for summary disposition. *Featherly v Teledyne Industries, Inc,* 194 Mich App 352, 357; 486 NW2d 361 (1992). This Court examines the facts of this case in a light most favorable to plaintiff. *Radtke, supra.* Accordingly, our review of a motion for summary disposition is de novo.

B

We must first determine whether the oral assurances given to plaintiff are sufficient to create an employment contract terminable only for just cause. Employment contracts for an indefinite duration are presumptively terminable at the will of either party. *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937). To overcome the presumption of employment at will, a party must present sufficient proof either of a contractual provision for employment for a definite term or of

a provision forbidding discharge in the absence of just cause. *Rowe v Montgomery Ward & Co, Inc*, 437 Mich 627, 636; 473 NW2d 268 (1991).

There are two alternative theories that may support a claim of wrongful discharge. The first theory is grounded in contract principles. The contract theory is shown by the existence of an express agreement, oral or written. *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 598; 292 NW2d 880 (1980). The second theory is termed the legitimate expectations theory and is based on the employee's legitimate expectations of continued employment absent just cause for termination arising out of the employer's policies and procedures. *Id.*

In the instant case, we are only concerned with whether plaintiff has proven the existence of an express agreement based mainly on the oral assurances given him during the preemployment stages. In *Rowe, supra* at 645, our Supreme Court made clear that "oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will." When analyzing oral statements for contractual implications, the meaning that reasonable persons might have given the language under the circumstances must be determined. *Rowe, supra* at 640. We believe, on the basis of the factors set forth in *Rowe,* that plaintiff has alleged sufficient objective evidence to permit a reasonable juror to find that a reasonable promisee would interpret the statements made by Poissant, Larson, and Taubman as a promise of termination only for just cause. *Rood v General Dynamics Corp,* 444 Mich 107, 119; 507 NW2d 591 (1993).

Taken in a light most favorable to plaintiff, the evidence establishes that plaintiff engaged in preemployment negotiations regarding job security. Plaintiff was the vice president of finance at Rapis-

tan before being contacted by an employment search agency. Although he was not looking for a new job, he agreed to meet with Poissant. At the meeting with Poissant, he specifically inquired about job security because the position was new, and he inquired about the stability of the Taubman Company. He made known to Poissant that he did not want to be in an environment of "summary dismissals," as was the case with some employees at Rapistan, although his employment had not been terminated by Rapistan. Poissant assured plaintiff that the environment was not one where he needed to be concerned with summary dismissal. Poissant assured him that defendant offered the same kind of job security that he had at Rapistan, that he would not be dismissed without cause, and that defendant had a performance evaluation system or regular reviews. Poissant informed plaintiff that the performance evaluation system normally occurred once a year and that employees were rewarded or dismissed on the basis of their performance utilizing that system.

Plaintiff expressed his same concerns to Larson, and Larson also assured plaintiff that there was a system of employee evaluation used for everyone in the company. Robert Taubman further assured plaintiff that employees were reviewed and only if they were not performing would they be discharged. Therefore, plaintiff specifically engaged in preemployment negotiations regarding job security and the parties discussed job security in the sense of requiring just cause for plaintiff's termination. *Rowe, supra* at 643; *Rood, supra* at 120.

Further, plaintiff was applying for the singular executive position of vice president of financial services. Such a position is similar to that in *Toussaint* and unlike the "one of many departmental salespersons" as in *Rowe.* Because plaintiff was

leaving a well-paid, executive position at Rapistan, it is reasonable to conclude that job security would be important to him.

Also, in the instant case, plaintiff was given few, if any, documents at the preemployment stage. Indeed, the only document referred to by both parties is the employment application form. However, the acknowledgment of his employment being at will is unsigned and plaintiff claims that he never received or saw the document.

We find that the oral assurances assertedly made by Poissant, Larson, and Taubman in the preemployment negotiation stage were sufficient to create an express agreement for just-cause employment. Coupled with the fact of the uniqueness of the position and the lack of any handbooks, documents, or other material given to plaintiff suggesting employment at will, we find that plaintiff has alleged sufficient evidence from which reasonable minds could find that a reasonable promisee would interpret the statements as a promise forbidding termination absent just cause.

C

Having concluded that the oral statements formed an express agreement for just-cause employment, we must next determine if the employer could change unilaterally the nature of the employment relationship with the memorandum sent in March of 1986 providing for employment at will. Plaintiff does not deny receiving the memorandum, but, he did not sign an acknowledgment form.

In *In re Certified Question,* 432 Mich 438, 441; 443 NW2d 112 (1989), our Supreme Court held that a company's written policy statements, which created legitimate expectations in the employee

that he would be discharged for just cause only, could be unilaterally modified provided that the employer gives the affected employees reasonable notice of the policy change. However, the instant case is not premised on the legitimate expectations theory of creation of an employment contract providing for discharge for cause only. Rather, this case involves an express agreement that discharge will be only for cause.

In *Rowe, supra* at 650-651, the Supreme Court found the fact that the plaintiff did not sign the disclaimers that employment was at will to be not determinative, because the plaintiff did not have an express contract providing that discharge would be only for cause. The Court made clear that if a plaintiff has a prior express contract providing that discharge will be only for cause, then the plaintiff's assent is required to modify the agreement. *Rowe, supra* at 651.

Therefore, the fact that plaintiff did not sign the acknowledgment form in this case is determinative. By not signing the acknowledgment form, plaintiff evidenced an intent not to assent to the modification of the express agreement that discharge would be only for cause. Further, there are no other acts of the parties, including written and spoken words, that indicate that plaintiff assented to modify the express agreement. *Farrell v Automobile Club of Michigan (On Remand),* 187 Mich App 220, 228; 466 NW2d 298 (1991); *Scholz v Montgomery Ward & Co, Inc,* 437 Mich 83, 90-93; 468 NW2d 845 (1991).

Accordingly, we hold that the trial court erred in granting defendant summary disposition with regard to the wrongful discharge claim. Plaintiff has alleged sufficient facts to give rise to a question for a trier of fact whether there was an express agreement that his employment would be

terminated only for just cause. Further, because plaintiff did not assent to the modification of the express contract, the memorandum providing that all employment was at will did not change the nature of the employment contract.

### III

Plaintiff next argues that the trial court erred in granting summary disposition with regard to his age discrimination claim. Plaintiff's claim of age discrimination is premised on the provisions of the Civil Rights Act, which prohibits discrimination on the basis of age. MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

The burden of proof in an age discrimination case is allocated as follows: (1) the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination; (2) if the plaintiff is successful in proving a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff then has the burden of proving by a preponderance of the evidence that the legitimate reason offered by the defendant was merely a pretext. *Featherly, supra* at 358.

A prima facie case of age discrimination can be made by proving either intentional discrimination or disparate treatment. *Wolff v Automobile Club of Michigan,* 194 Mich App 6, 11; 486 NW2d 75 (1992). To establish a prima facie case of age discrimination under the intentional discrimination theory, plaintiff must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position, and (4) he was replaced by a younger person. *Matras v Amoco Oil Co,* 424 Mich 675, 683; 385 NW2d 586 (1986). In proving disparate treatment, plaintiff must show

that he was a member of a protected class and that he was treated differently than persons of a different class for the same or similar conduct. *Wolff, supra* at 11.

Age need not be the only reason or main reason for discharge, but it must be one of the reasons that made a difference in determining whether to discharge a person. Therefore, the question is whether age was a determining factor in plaintiff's discharge. *Matras, supra* at 682.

Plaintiff has made out a prima facie case of age discrimination under the intentional discrimination theory. Plaintiff was forty-seven years old when he was discharged. Second, plaintiff was discharged. Third, considering plaintiff's employment and educational background, he was clearly qualified for the position of vice president of financial services. Fourth, plaintiff was arguably replaced by a younger employee, Cathleen Knight, who was thirty years old when she was hired. However, Knight was hired to assume some of Poissant's administrative responsibilities (as was plaintiff when he was hired) and it is questionable whether Knight actually assumed plaintiff's position. Taken in a light most favorable to plaintiff, we will accept that plaintiff was replaced by a younger employee.

Defendant states that plaintiff was discharged because of a difference in management philosophies. While this is a somewhat amorphous reason, we will accept it as a legitimate, nondiscriminatory reason for discharge. Finally, however, plaintiff has not met his burden of establishing that the reason given by the defendant was a pretext.

Plaintiff has offered no other evidence that age was a determining factor for his discharge. Plaintiff's replacement by a younger employee, without more, is insufficient to support a claim of age

discrimination. *Eliel v Sears, Roebuck & Co,* 150 Mich App 137, 141; 387 NW2d 842 (1985). Because plaintiff has not rebutted defendant's legitimate, nondiscriminatory reason for discharge, the trial court properly dismissed his claim of age discrimination.

IV

In his last claim, plaintiff argues that the trial court erred in granting summary disposition with regard to his claim of promissory estoppel. We agree with plaintiff that the trial court incorrectly ruled that promissory estoppel is "just another way of rephrasing *Toussaint,*" because promissory estoppel is a claim that is separate from a claim of wrongful discharge. *Schipani v Ford Motor Co,* 102 Mich App 606; 302 NW2d 307 (1981). However, we find that plaintiff has failed to meet the requirements of promissory estoppel.

The elements of promissory estoppel are: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Id.* at 612-613. In this case, plaintiff left his position at Rapistan and moved from Grand Rapids to the Detroit area. This is insufficient to establish reliance. *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438, 443; 505 NW2d 275 (1993) (resignation from one's position to assume another and relocation of one's family are customary and necessary incidents of changing jobs rather than consideration to support a claim of promissory estoppel).

Accordingly, the trial court's grant of summary

disposition with regard to the claim of promissory estoppel is affirmed, although for different reasons. *Jennings v Southwood,* 198 Mich App 713, 718; 499 NW2d 460 (1993).

v

Finally, defendant urges that plaintiff may not recover any damages as a matter of law because he did not mitigate his damages. Defendant's failure to cross appeal precludes our review of this issue. MCR 7.207.

Accordingly, we affirm the grant of summary disposition with regard to the claims of age discrimination and promissory estoppel, we reverse the grant of summary disposition with regard to the claim of wrongful discharge, and we remand for further proceedings consistent with this opinion. We retain no further jurisdiction.

CAVANAGH, J., concurred.

WHITE, P.J., *(concurring).* I join in parts I, II, and III of the opinion, and I concur in the results reached in parts IV and V.