MARTIN v RAPID INTER-URBAN TRANSIT PARTNERSHIP

Docket No. 259228. Submitted June 7, 2006, at Grand Rapids. Decided
July 11, 2006, at 9:05 a.m. Leave to appeal sought.

Gaila Marie Martin brought an action against the Rapid Inter-Urban
Transit Partnership (ITP) and the city of Grand Rapids in the
Kent Circuit Court after she slipped and fell on the steps of a
city-owned shuttle bus operated by the ITP. Martin alleged that
the defendants negligently operated the shuttle bus by failing to
clear the steps of snow and ice and failing to install step heaters or
provide ice scrapers. The defendants moved for summary disposi-
tion, arguing that because the bus was stopped when Martin
slipped, her injuries could not have been caused by the negligent
operation of the bus, and therefore her claim did not fall under the
motor vehicle exception to governmental immunity from tort
liability. The trial court, James R. Redford, J., granted the defen-
dants' motion for summary disposition with respect to the argu-
ment that the plaintiff's claim fell under the proprietary function
exception, but denied the motion with respect to the motor vehicle
exception, reasoning that loading and unloading passengers was
an integral part of operating a bus. The defendants appealed.

The Court of Appeals *held*:

The trial court erred in concluding that the motor vehicle
exception to governmental immunity applied to Martin's claim.
The reasoning on which the trial court relied to conclude that the
bus was in operation while the plaintiff was disembarking was
rejected by the Michigan Supreme Court in *Chandler v Muskegon
Co*, 467 Mich 315 (2002), which held that the "operation" of a
motor vehicle is limited to activities that are directly associated
with driving.

Reversed and remanded for further proceedings.

GOVERNMENTAL IMMUNITY — EXCEPTIONS — GOVERNMENT-OWNED VEHICLES.

To fall within the motor vehicle exception to governmental immu-
nity from tort liability, a plaintiff's injury must arise from the
negligent performance of activities that are directly associated
with the driving of the vehicle, not activities related to the
vehicle's maintenance (MCL 691.1405).

*Law Offices of Samuel I. Bernstein* (by *Michael A. Weisserman*) for the plaintiff.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Marcelyn A. Stepanski*), and *Janice F. Bailey* and *Catherine M. Mish* for the defendants.

Before: O'CONNELL, P.J., and MURPHY and WILDER, JJ.

PER CURIAM. In this action alleging liability against defendants under the exception to governmental immunity related to the negligent operation of a motor vehicle, MCL 691.1405, defendants appeal by right the order denying in part and granting in part defendants' motion for summary disposition. We reverse the portion of the trial court's order concluding that plaintiff established a genuine issue of material fact concerning whether her injuries resulted from the "operation" of a government-owned motor vehicle with the meaning of MCL 691.1405.

I

Plaintiff was injured when she slipped and fell down the steps of a shuttle bus owned by the city of Grand Rapids, but operated and maintained by Inter-Urban Transit Partnership (ITP) as part of the city's shuttle bus services, known as "DASH."[1] The ITP is a municipal transportation authority formed pursuant to the Public Transportation Authority Act, 1986 PA 196, MCL 124.451 *et seq.* In accordance with an agreement between the city and the ITP, ITP maintains and provides the personnel to operate all DASH buses, and the city pays any expenses in excess of state subsidies.

---

[1] Where applicable, Rapid Inter-Urban Transit Partnership will be identified by its proper name, Inter-Urban Transit Partnership, throughout this opinion.

On March 4, 2002, plaintiff ascended the steps of a DASH shuttle bus without incident. When the shuttle bus driver stopped to allow plaintiff to disembark, she slipped on the steps and fell to the pavement. Fearful that the shuttle bus driver would immediately drive off and run over her leg, plaintiff screamed. A passenger who had just disembarked from the same shuttle without incident came to her aid. In the incident report prepared by the driver, he acknowledged that the steps were wet and slippery. However, the driver described the accident as unpreventable because the shuttle bus was not equipped with a step heater[2] and no ice scraper was on the shuttle bus, contrary to ITP policy.

Generally, all city buses are equipped with step heaters. However, the record reflects that the DASH shuttle buses were not delivered with step heaters as ordered, and that the city, upon learning of the omission, decided not to have the shuttle buses retrofitted because the buses are washed each night and garaged in a facility that is kept at a temperature of 40 degrees. Pursuant to ITP policy, shuttle bus drivers, before each route, are required to inspect the steps and clear any accumulated ice with a specially designed ice scraper.

Plaintiff filed a general complaint in the circuit court, alleging that defendants negligently operated and maintained the shuttle bus. Specifically, plaintiff alleged that defendants negligently maintained the bus in a dangerous condition that allowed for an unnatural accumulation of snow and ice, negligently failed to clear the shuttle bus steps of ice and snow, and negligently failed to install step heaters or provide ice scrapers. Plaintiff also asserted a claim of negligent operation

---

[2] Step heaters are small heaters that direct heat toward the steps through metal louvers.

pursuant to § 5 of the governmental immunity act, MCL 691.1405, and the Motor Carrier Safety Act, MCL 480.11 *et seq.*

Defendants filed a joint motion for summary disposition under MCR 2.116(C)(7), arguing that they were entitled to governmental immunity and that plaintiff could not establish liability pursuant to MCL 691.1405. Defendants contended that because plaintiff was injured while the shuttle bus was stopped, the incident did not arise from the negligent operation of the shuttle bus. To support their arguments, defendants principally cited *Chandler v Muskegon Co*, 467 Mich 315, 320-321; 652 NW2d 224 (2002) (stating that " 'operation of a motor vehicle' means that the motor vehicle is being operated *as* a motor vehicle" and "encompasses activities that are directly associated with the driving of a motor vehicle"). Plaintiff responded that defendants mischaracterized the law in *Chandler*, arguing that the determining factor whether the shuttle bus was being operated as a motor vehicle was not whether the bus was actually moving at the time of plaintiff's fall, but whether it was in use as a bus at the time of the accident.

The trial court granted in part and denied in part defendants' motion for summary disposition. The trial court dismissed plaintiff's unpleaded arguments that the proprietary function exception, MCL 691.1413, applied. However, the trial court accepted plaintiff's argument that defendants were not immune from suit under MCL 691.1405, concluding that the shuttle bus, as used in this case, satisfied the *Chandler* definition of "operation of a motor vehicle":

> There is no reason on God's green earth for this vehicle to exist as it is designed, operated, and driven other than to load and unload passengers. That's what it's there for.

> That's the whole rationale for its existence, and the Court believes that when something is operating exactly as its designed for on the streets and roadways of our community, exactly the way the manufacturer designed it for, exactly the way that the driver wanted it to be, exactly the way that the governmental organization that undertook the hiring of it to be done, that sure seems like operation of a motor vehicle to this Court . . . .

Accordingly, the trial court denied this aspect of defendants' motion for summary disposition.[3] Defendants now appeal.

II

This Court reviews de novo a trial court's grant of summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). The applicability of governmental immunity is a question of law that is also reviewed de novo on appeal. *Carr v City of Lansing*, 259 Mich App 376, 379; 674 NW2d 168 (2003).

In reviewing a motion for summary disposition under MCR 2.116(C)(7), this Court considers the affidavits, depositions, admissions, and other documentary evidence filed by the parties and determines whether they indicate that the defendant is entitled to immunity. *Tarlea v Crabtree*, 263 Mich App 80, 87; 687 NW2d 333 (2004). "[G]overnmental immunity is a characteristic of government." *Mack v Detroit*, 467 Mich 186, 198; 649 NW2d 47 (2002). A plaintiff must allege facts justifying the application of an exception to immunity. *Tarlea, supra* at 87-88. The immunity enjoyed by governmental

---

[3] The trial court also denied without prejudice the ITP's request to be dismissed from the action on the ground that it is not the owner of the shuttle bus. Because the ITP does not challenge this aspect of the trial court's ruling on appeal, we express no opinion regarding the ITP's status as owner of the shuttle bus.

agencies is broad, and the statutory exceptions to immunity are narrowly construed. *Stanton v Battle Creek*, 466 Mich 611, 618; 647 NW2d 508 (2002).

III

On appeal, defendants argue they are entitled to dismissal of this case based on governmental immunity. Defendants contend the trial court improperly adopted an expansive reading of the motor vehicle exception to governmental immunity by concluding that the failure to remove ice or snow from the shuttle bus steps constituted the "negligent operation" of a motor vehicle. More specifically, defendants contend that plaintiff's allegations of negligence relate not to the negligent operation of the shuttle bus, but to the maintenance of the vehicle. We agree.

MCL 691.1407 contains the legislative codification of governmental immunity from tort liability: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function . . . ." MCL 691.1407(1).

The exception to governmental immunity on which plaintiff relies is the motor vehicle exception, which provides in pertinent part: "Governmental agencies shall be liable for bodily injury and property damage *resulting from* the negligent *operation* by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405 (emphasis added).

"The motor vehicle exception requires that a plaintiff's injuries result from the operation of a government vehicle." *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000). Accordingly, three requirements must be satisfied under the statute for the exception to

apply: a plaintiff must allege facts demonstrating that plaintiff's injuries (1) *resulted from* (2) the negligent *operation* of (3) defendants' *motor vehicle* for purposes of MCL 691.1405. *Id.*

In this case, the parties do not dispute that the DASH shuttle bus meets the definition of a "motor vehicle,"[4] nor do the parties challenge the applicability of the "resulted from" requirement; thus, resolution of this issue requires a determination whether plaintiff has alleged sufficient facts to satisfy the "negligent operation" requirement of MCL 691.1405.

In *Chandler*, the Supreme Court held that the motor vehicle exception to governmental immunity did not apply when the plaintiff was injured by a bus parked in a maintenance facility because the bus was not being "operated" when the injury occurred.[5] After examining the common dictionary meaning of the term "operation," the *Chandler* Court determined that the "negligent operation" of a vehicle requires that "the motor vehicle is being operated *as* a motor vehicle" and the exception encompasses only "activities that are directly associated with the driving of a motor vehicle." *Chandler, supra* at 320-321. In doing so, the Court expressly rejected the previously recognized principle that a vehicle is in operation "as long as it is being used or employed in some specific function or to produce some desired work or effect." *Id.* at 318, 320 n 7, 321. The Supreme Court reasoned that the term "operation"

---

[4] "Motor vehicle" has been defined as "an automobile, truck, bus, or similar motor-driven conveyance." *Stanton, supra* at 617-618, quoting *Random House Webster's College Dictionary* (2001).

[5] The specific facts in *Chandler* involved a bus driver whose neck became caught in the hydraulic doors as he was attempting to leave the bus after parking it in a barn. *Chandler, supra* at 316. The plaintiff, who was waiting to clean the bus, saw the incident and was injured while trying to assist the driver. *Id.*

required a narrower construction consistent with the common definition and the Legislature's adherence to a more limited use of the term "operation."[6] *Id.* at 320-321.

The significance of *Chandler* is that it implicitly overruled *Orlowski v Jackson State Prison*, 36 Mich App 113; 193 NW2d 206 (1971), and its progeny, which previously interpreted the meaning of the statutory term "operation" under similar factual circumstances and legal theories raised in the instant case. In *Orlowski*, this Court adopted the principle that even if a vehicle is stationary, a vehicle is in operation "as long as it is being used or employed in some specific function or to produce some desired work or effect." *Id.* at 116. Accordingly, this Court rejected the defendants' argument that the failure to latch a truck's tailgate and the injuries sustained from a prisoner's fall from the rear of the moving truck were not encompassed by the "negligent operation" exception to governmental immunity:

> At the time and place of the accident the truck was being put to a definite task and was carrying out a desired objective. It is undisputed that the truck was being used for the purpose of transporting the inmates . . . .
>
> [The failure of the] operator of the truck [to] either . . . close the tailgate properly, or . . . determine if it was properly closed . . . . could be considered by the jury in determining the presence of negligence in the operation of a motor vehicle. [*Id.* at 116-117 (citations omitted).]

In our judgment, the trial court in the instant case improperly applied the *Orlowski* standard by focusing on the objective and purpose of the DASH shuttle bus. While it is true that, unlike other types of vehicles, a bus is specifically designed to operate to transport passengers, requiring passengers to be able to board and disembark, the use or function of the shuttle bus is

---

[6] See MCL 257.401(1), MCL 257.625, and MCL 550.3105.

not dispositive. " '[O]peration' [of a vehicle is] distinct from ownership, maintenance, and use." *Chandler, supra* at 320 n 7, citing MCL 550.3105. " ' "Use" is defined more broadly than the mere carrying of persons and, while it encompasses the "operation" of the bus, it may also include a range of activity unrelated to *actual driving.*' " *Id.* at 321 n 7, quoting *Pacific Employers Ins Co v Michigan Mut Ins Co*, 452 Mich 218, 226; 549 NW2d 872 (1996) (emphasis added).

Under the *Chandler* standard, the proper inquiry is whether defendants' acts of alleged negligence include "activities that are *directly* associated with *the driving* of a motor vehicle." *Chandler, supra* at 321 (emphasis added). Because the Supreme Court did not state that the exception encompasses activities *indirectly* associated with the driving of a motor vehicle, we hold that defendants' alleged failure to install step heaters or remove accumulated ice or snow are not the type of activities *directly* associated with the driving of the DASH shuttle bus. The *Random House Webster's College Dictionary* (2000) defines "drive" as "to cause and guide the movement of (a vehicle, an animal, etc.): *to drive a car*; *to drive a mule*." Applying this definition to the facts of the present case, we find no basis to conclude that the alleged failure to eliminate the slippery condition of the shuttle bus steps directly related to "actual driving." Moreover, when the shuttle bus stopped[7] to allow several passengers to disembark, it ceased to be engaged in activities related directly to driving. See *Poppen v Tovey*, 256 Mich App 351, 355-356; 664 NW2d 269 (2003) (concluding that once a city vehicle stopped for approximately three to five minutes, its presence on the road was no longer "directly associ-

---

[7] We are not able to discern from the record the exact length of time the shuttle bus remained stationary.

ated with the driving" of that vehicle and the vehicle was not being operated "as" a motor vehicle at the time of the accident).

While the installation of step heaters or the scraping of ice and snow from the steps may be integral to the ability of passengers to board and disembark, these activities cannot, under the narrow construction afforded statutory exceptions to governmental immunity, be reasonably construed as integral to, or direct activities associated with, driving. *Stanton, supra* at 617. Under plaintiff's theory, a defective seat, handle, interior light, or other piece of equipment related and inherent to the transportation of passengers, but not directly related to driving, would be included under the motor vehicle exception to government immunity. As observed in Justice KELLY's dissenting opinion, the *Chandler* Court did not "include within its reading of the statutory exception those functions that are distinct from, but necessary to and inherent in, driving a motor vehicle." *Chandler, supra* at 322 (KELLY, J., dissenting). Accordingly, we decline to construe "[negligent operation]" so broadly that it could apply to virtually any situation imaginable in which [a bus] is involved regardless of the nature of its involvement." *Id.* at 321.

Instead, we find that plaintiff's allegations relating to the lack of safety equipment are independent of the allegations relating to the operation of the shuttle bus. We therefore conclude that plaintiff's allegations of negligence, i.e., failure to remove ice and snow or install step heaters, pertain more to improper maintenance than to functions necessary for actual driving.[8]

---

[8] We also note that plaintiff failed to plead *any* facts supporting her allegation that the shuttle bus was operated or driven in a negligent manner. Cf. *Regan v Washtenaw Co Bd of Co Rd Comm'rs (On Remand)*, 257 Mich App 39, 51 n 13; 667 NW2d 57 (2003) (concluding that the

For the reasons stated, we conclude that the statutory exception set forth in MCL 691.1405 does not apply, and plaintiff's claim is barred by governmental immunity. The trial court erred in determining that plaintiff's alleged injury resulted from acts directly related to the driving of a government-owned vehicle.

We decline to address plaintiff's additional arguments on appeal that the ITP was engaged in a proprietary function and that defendants were grossly negligent. These arguments are not properly before this Court. An appellee is limited to the issues raised by the appellant unless it files a cross-appeal as provided in MCR 7.207. *Barnell v Taubman Co*, 203 Mich App 110, 123; 512 NW2d 13 (1993). Plaintiff's failure to file a cross-appeal precludes appellate review. *Id.*

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

plaintiffs sufficiently pleaded that their injuries resulted from activities related to driving, where the plaintiffs alleged the motor vehicles were "operated in a negligent manner, thus causing injuries, e.g., failure to pay proper attention to the course of travel, failure to keep the [vehicle] under control, and failure to operate the [vehicle] in a manner so as not to endanger motorists.")