*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS BUCKLEY and CAROLYN
BUCKLEY,

UNPUBLISHED
January 28, 2020

Plaintiffs-Appellants,

v

E. ANN REDFIELD, TRISTA REDFIELD,
RIVERPOINTE REALTY, INC., doing business
as CENTURY 21 RIVERPOINTE REALTY,
TIMOTHY MOORE, and SELIMA HADAD as
Trustee of the SELIMA HADAD REVOCABLE
LIVING TRUST,

No. 344684
Wayne Circuit Court
LC No. 17-008910-CH

Defendants-Appellees.

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Plaintiffs appeal as of right an order granting defendants' motions for summary disposition of this case arising from a failed attempt to purchase real property. We affirm.

In May 2017, plaintiffs were interested in purchasing a condominium owned by defendant Selima Hadad (Hadad) as the trustee of a revocable living trust. Defendants E. Ann Redfield, Trista Redfield, and Riverpointe Realty (Riverpointe) were Hadad's real estate agents. At that time, defendant Timothy Moore (Moore) had already submitted an offer to purchase the same condominium contingent upon an appraisal for financing, which Hadad had accepted. But when the property did not appraise at the required value for Moore's financing, Riverpointe notified plaintiffs' real estate agent, Joyce Reedy, that the property remained on the market.

On May 24, 2017, plaintiffs' agent sent a standard form "contract to purchase" to Riverpointe, Hadad's representative. We refer to this as "Contract 1." According to paragraph five on page 1, the seller was to give occupancy immediately at closing. On page four, at the paragraph labeled "additional conditions," the word "none" was typed.

-1-

Upon receipt of the offer, and on the same day, Hadad changed paragraph five, crossing out the words requiring occupancy immediately at closing and adding the words "see additional conditions." We refer to this as "Contract 2." On page four, at the paragraph labeled "additional conditions," the word "none" was crossed out and the following was typed: "Seller to have occupancy until June 27, 2017 at 5 pm at no charge." The two changes were initialed by Hadad. The form contract had a paragraph 25 on page four which was labeled "Counter" and stated:

> In the event the Seller makes any written changes in any of the terms and/or conditions to the offer presented by Buyer, such changed terms and/or conditions, shall constitute a Counter-Offer by Seller to Buyer which shall remain valid until DATE _____ TIME ____ (unless earlier withdrawn), and shall require acceptance by the Buyer by initialing each change before such date and time.

No date or time was added. Following paragraph 25 on page four was the "Acceptance" paragraph which stated:

> By affixing Seller's signature hereto, the Seller accepts this offer and acknowledges receipt of a copy hereto. Seller further agrees that Broker has procured said offer and has brought about this sale and agrees to pay Broker for services rendered a commission as set forth in the Listing Contract for the sale of the property. . . .

Hadad's electronic signature and printed name followed this paragraph.

Upon receipt, plaintiffs made additional changes to the contract to purchase. We refer to this as "Contract 3." The closing date which was originally typed as June 16, 2017 on page one, was changed by handwritten addition to June 21, 2017, and was initialed by plaintiffs. Further, on page four, at the paragraph labeled "additional conditions," the words "no charge" pertaining to the seller's occupancy were crossed out and the following was handwritten: "$30.00 per diem." The change was initialed by plaintiffs. Plaintiffs signed and dated—May 25, 2017 at 1330—the paragraph on page four which states: "The undersigned Buyer hereby acknowledges receipt of the Seller's signed acceptance of the forgoing Contract to Purchase."

However, about 30 minutes later, Hadad made an additional change to the contract to purchase which was submitted to plaintiffs. We refer to this as "Contract 4." This change was typed in at the paragraph labeled "additional conditions" on page four and states: "This sale is subject to release of first purchase agreement." This refers to Moore's purchase agreement that had been entered into before plaintiffs submitted their offer. Hadad initialed the change. Plaintiffs did not respond to this submission.

Ultimately, Moore purchased the subject property and, on June 15, 2017, plaintiffs brought this action against defendants alleging breach of contract, fraud, innocent misrepresentation, agency/promissory estoppel, and requesting that the court enter an order quieting title in plaintiffs. They also recorded an "affidavit of facts" and a notice of lis pendens pertaining to the subject property.

The Riverpointe defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that there was never a binding purchase agreement between Hadad and plaintiffs.

"While offers and counter-offers were exchanged, no acceptance ever occurred such that there was a meeting of the minds sufficient to form a contract." Plaintiffs did not accept Hadad's last counteroffer which was that the sale was subject to release of the first purchase agreement— Moore's purchase agreement. Further, defendants argued, plaintiffs' complaint failed to state claims of fraud, innocent misrepresentation, agency or promissory estoppel, and quiet title. Accordingly, the Riverpointe defendants requested that the lis pendens be discharged and this case dismissed in its entirety. Defendants Moore and Hadad concurred in the motion for summary disposition.

Plaintiffs responded to the motions for summary disposition, arguing that Hadad executed the "acceptance" provision on page four of the purchase agreement and did not complete the "counter-offer" section on Contract 2; thus, all of the terms were accepted and a binding contract was formed. Thereafter, plaintiffs executed the "acknowledgment" section of the agreement, indicating that they received the seller's signed acceptance. At that point, plaintiffs argued, the parties had a fully executed contract. The revision that Hadad made after the parties executed the contract was an improper unilateral modification that did not convert her acceptance into a counteroffer. Accordingly, plaintiffs requested that the court deny defendants' motions for summary disposition.

On March 27, 2018, oral arguments were held on defendants' motions and the parties argued consistent with their briefs. Essentially, defendants argued that when Hadad signed the acceptance, she added additional terms which made it a counteroffer. Then plaintiffs added a charge for occupancy which was another counteroffer. Hadad then added another term which was the release of the first purchase agreement in another counteroffer that was never accepted by plaintiffs. Thus, there were several counteroffers and no final acceptance of Hadad's final counteroffer; accordingly, a contract was never formed. Plaintiffs argued that, once Hadad signed the "acceptance" provision, the contract was formed. The trial court disagreed with plaintiffs, holding that "on the undisputed sequence of events no contract was formed." And summary disposition before the completion of discovery was not premature because plaintiffs failed to set forth any potential fact that could be discovered that would change the result. Thereafter, an order granting defendants' motions for summary disposition was granted, dismissing the case in its entirety. Plaintiffs' motion for reconsideration was denied, and this appeal followed.

Plaintiffs argue that the trial court erred when it considered extrinsic evidence to determine whether the purchase agreement at issue in this case was a binding and enforceable contract, and therefore, summary disposition was not appropriate. Plaintiffs' argument is without merit.

We review de novo a trial court's decision to grant a motion for summary disposition. *Sheridan v Forest Hills Pub Sch*, 247 Mich App 611, 620; 637 NW2d 536 (2001). A motion brought under MCR 2.116(C)(10) tests whether there is factual support for a claim and should be granted if, after review of the admissible evidence, no genuine issue of material facts exists. *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The determination whether a contract exists is a question of law reviewed de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Pakideh v Franklin Commercial Mtg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). Stated another way, there is no legally enforceable contractual obligation until there is an offer and an acceptance of that specific offer. *Mathieu v Wubbe*, 330 Mich 408, 412; 47 NW2d 670 (1951). If material terms are altered, a response to an offer will be deemed a counteroffer not an acceptance. *Zurcher v Herveat*, 238 Mich App 267, 296; 605 NW2d 329 (1999). This is so because to form a valid contract, there must be mutual assent or a meeting of the minds on all the essential terms of the contract. *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citations omitted).

In this case, plaintiffs argue that the version of the contract to purchase that was executed by both parties—Contract 3—was a valid and binding contract; it was not a counteroffer by plaintiffs as posited by defendants. But plaintiffs fail to address the fact that material terms of that version of the contract to purchase had been modified by plaintiffs and then submitted back to defendants. Plaintiffs actually changed the closing date from June 16, 2017 to June 21, 2017. And plaintiffs changed the seller's post-closing occupancy from "no charge" to "$30.00 per diem." These were two material changes to the contract to purchase. The gist of plaintiffs' argument is that, because Hadad signed the "acceptance" provision on page four of Contract 2 and did not complete paragraph 25, the counteroffer section, plaintiffs could add any terms they desired, then sign the "acknowledgment" paragraph, and this "new" version of their contract— Contract 3—is binding against Hadad, even if she did not specifically agree to the "new" terms. Plaintiffs' argument is unreasonable and untenable.

First, an obvious problem with plaintiffs' argument is that it overlooks the fundamental tenet of all contracts which is that there must be mutual assent or a meeting of the minds on all the essential terms of the contract. *Burkhardt*, 260 Mich App at 655; see also *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548-549; 487 NW2d 499 (1992). The closing date and terms of the seller's post-closing occupancy are such essential terms of the contract requiring mutual assent. And plaintiffs added these terms after Hadad signed the "acceptance" provision and submitted her counteroffer, Contract 2, as discussed below.

Second, plaintiffs' argument ignores the principle that acceptance of a counteroffer must be unambiguous and in strict compliance with the counteroffer to form a contract. Plaintiffs changed two material terms—the closing date and the post-closing occupancy terms—and, thus, no binding contract was formed when they signed the acknowledgement paragraph of Contract 3. See *Pakideh*, 213 Mich App at 640.

Third, the fact that Hadad executed the "acceptance" provision on Contract 2 did not cause a contract to be formed when plaintiffs later executed the "acknowledgement" paragraph on Contract 3. Hadad's purported "acceptance" of plaintiffs' offer, Contract 1, was ambiguous and not in strict conformance with the offer; thus, no contact was formed. See *id*. Plaintiffs'

-4-

offer, Contract 1, required occupancy immediately at closing but Hadad changed that term, adding the condition that she was to "have occupancy until June 27, 2017 at 5 pm at no charge." She added this new term and also executed the "acceptance" provision; but, she clearly did not unambiguously accept plaintiffs' offer and instead made a counteroffer. Paragraph 25, the "counteroffer" section, states that if the Seller makes any written changes to the terms and conditions of offer presented, such changes "shall constitute a Counter-Offer by the Seller to the Buyer . . . ." Although Hadad could have added a date and time to which the counteroffer would remain valid, such terms were not required to complete a valid counteroffer. Hadad's written changes to Contract 2, including adding the condition that she maintain occupancy until June 27, 2017 at 5 pm at no charge, constituted a counteroffer regardless of her execution of the "acceptance" paragraph on Contract 2. That is, her "acceptance" was not unambiguous and in strict conformance with plaintiffs' offer so no contract was formed. See *id*.

On appeal, plaintiffs argue that the final version of the contract to purchase—Contract 4—which added the contingency that the sale was subject to the release of Moore's purchase agreement, should not have been considered by the trial court. But it is not evident from the lower court record that the trial court actually considered Contract 4; rather, the court held that "on the undisputed sequence of events no contract was formed." And we agree with the trial court; no contract was formed. At no point in the parties' negotiations was there a meeting of the minds on all the essential terms of the contract to purchase. See *Burkhardt*, 260 Mich App at 655. Rather, plaintiffs made an offer, Hadad made a counteroffer, plaintiffs then made a counteroffer, and Hadad made another counteroffer. During this negotiation, the property was sold to another party—as was Hadad's right. While plaintiffs may have believed that they had a binding contract to purchase the subject property, they were mistaken. Again, we look objectively at the transaction to determine whether there was a meeting of the minds, not at the parties' subjective states of mind. See *Calhoun Co*, 297 Mich App at 13.

And we reject plaintiffs' argument on appeal that the trial could not consider "extrinsic evidence to attack the validity of the contract." According to plaintiffs, the trial court was only permitted to consider what was contained within the four corners of Contract 3 in determining whether the parties had reached a binding agreement. But plaintiffs' argument conflates the concepts of contract formation, involving offer and acceptance, with interpreting or enforcing the terms of a binding contract. This case involves the issue of contract formation, i.e., whether a binding contract was even formed. Whether an offer or counteroffer was accepted by a party "must be determined from the acts and circumstances of the parties, including their written or spoken words or by other acts or conduct." *Farrell v Auto Club of Mich (On Remand)*, 187 Mich App 220, 228; 466 NW2d 298 (1990), citing *Ludowici-Celadon Co v McKinley*, 307 Mich 149, 153; 11 NW2d 839 (1943). In this case, the trial court properly considered the evidence of negotiations that had been submitted by the parties—including Contracts 1 through 4—when it determined that, based on the undisputed sequence of events, no contract was formed.

In summary, the trial court properly granted defendants' motions for summary disposition, dismissing plaintiffs' complaint in its entirety. Accordingly, plaintiffs are to remove any remaining cloud on the title to the subject property, including their "affidavit of facts affecting real property" and notice of lis pendens that were recorded in Wayne County.

Affirmed.  Defendants are entitled to costs as the prevailing parties.  See MCR 7.219(A).


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens