WOLFF v AUTOMOBILE CLUB OF MICHIGAN

Docket No. 120283. Submitted December 5, 1991, at Detroit. Decided
      April 21, 1992, at 9:25 A.M. Leave to appeal sought.

      Robert F. Wolff brought an action in the Wayne Circuit Court
      against the Automobile Club of Michigan and the Auto Club
      Insurance Association, claiming wrongful discharge from em-
      ployment. The jury returned a verdict for the plaintiff, finding
      breach of contract and age discrimination, and the court, Lucile
      A. Watts,. J., granted the defendants' motion for remittitur,
      finding that the jury's verdict did not reflect the plaintiff's
      failure to mitigate damages. The defendants appealed, and the
      plaintiff cross appealed.

      The Court of Appeals *held:*

      1. Viewed in a light most favorable to the plaintiff, the
      evidence was sufficient to support the jury's verdict. The trial
      court properly denied the defendants' motion for a judgment
      notwithstanding the verdict.

      2. The trial court did not abuse its discretion in admitting
      the testimony of four former ' employees of the defendants
      concerning the circumstances under which each was hired. Any
      prejudicial effect was outweighed substantially by its probative
      value.

      3. Whether the plaintiff was constructively discharged from
      the member advisor position he took after he had been termi-
      nated from his position as a commissioned sales representative
      was a question for the jury. Accordingly, the trial court prop-
      erly denied the defendants' motion for a judgment notwith-
      standing the verdict with respect to this issue.

      4. Whether the defendants proved that the plaintiff was
      unreasonable in not seeking other employment was a question
      for the jury; accordingly, it was an abuse of discretion for the

REFERENCES

Am Jur 2d, Civil Rights §§ 226 *et seq.*; Constitutional Law § 770;
      Job Discrimination §§ 98 *et seq.*, §§ 1337 *et seq.*, §§ 2076 *et seq.*,
      § 2112, §§ 2171 *et seq.*
See the Index to Annotations under Age Discrimination; Equal
      Employment Opportunity.

trial court to enter remittitur, because the jury properly could have found that the plaintiff did not act unreasonably.

Affirmed in part and reversed in part.

CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AGE DISCRIMINATION — DISPARATE TREATMENT — EVIDENCE.

The finder of fact in an action for wrongful discharge in which age discrimination based on disparate treatment is alleged may consider whether the transfer of the plaintiff's work to another job classification evidences age discrimination where the members of the two job classifications perform similar duties but the average age of persons with the job classification to which the plaintiff's work was transferred is significantly less than the average age of persons with the job classification from which the work was transferred.

*Law Offices of John W. Mason, P.C.* (by *John W. Mason*), for the plaintiff.

*Fox & Grove, Chartered* (by *Kalvin M. Grove* and *Steven L. Gillman*), and *Finkel, Whitefield & Selik* (by *Robert J. Finkel*), for the defendants.

Before: HOLBROOK, JR., P.J., and BRENNAN and CAVANAGH, JJ.

PER CURIAM. Plaintiff brought this wrongful discharge suit against his former employers, Automobile Club of Michigan and the Auto Club Insurance Association (which hereinafter will be treated as a single defendant). Following trial, the jury returned a verdict in favor of plaintiff on claims of breach of contract, age discrimination, and mental distress, for a total award of $300,500. The trial court granted defendant's motion for remittitur and reduced the award by $80,000. Defendant appeals as of right from the jury verdict. Plaintiff cross appeals as of right from the order of remittitur.

Plaintiff worked for defendant for thirty-one years, from 1952 until 1983, as a commissioned

sales representative (CSR) before he was terminated for failing to meet defendant's sales quota. He then worked for defendant for approximately 1½ months as a member advisor before taking an early retirement. Plaintiff was fifty-seven years old when he retired.

In 1951, Park Zickel, the general manager of defendant at that time, approached plaintiff and offered him a job as a CSR. Zickel told plaintiff that in the thirty-six years that Zickel had worked for defendant, he had been paid a seven-percent commission on all new sales of auto insurance and a seven-percent commission on all renewals. Zickel never said anything about reserving the right to change the method of compensation, and plaintiff never expected the method to be changed. Zickel also said that the only people that were ever fired were those who withheld company funds.

When plaintiff was hired by defendant, the sales manual characterized the CSR position as a "well-paid career position." It also stated that "though the major portion of [a CSR's] income comes from the creditable handling of existing accounts, he is expected to prospect and solicit new business and establish and maintain an acceptable ratio of new business to the existing business he is assigned." There was no express statement that a CSR was terminable at will.

Plaintiff started working for defendant in 1952. He immediately began to sell automobile insurance and memberships to the Auto Club, and his "book of business" began to grow. A book of business is the list of customers to whom a CSR sold an insurance policy. Plaintiff received a seven-percent commission on the original sale of an automobile insurance policy and seven percent each time it was renewed. As plaintiff's book of business grew, so did his income.

In 1978, defendant instituted a new system of pay for the CSRs. Instead of paying on a commission basis, defendant paid CSRs a fixed sum of money for each sale, or "unit compensation." Plaintiff's income began to decline.

In 1980, defendant established a new category of workers, called member advisors, who performed many of the same functions as the CSRs. Like CSRs, member advisors sold automobile insurance, other insurance, and memberships. Member advisors serviced their customers in the same manner as did CSRs. Member advisors were different from CSRs in that they worked regular hours, were paid a salary, were not required to recruit new customers, and were not subject to a production quota.

In September 1981, defendant implemented a new minimum production system that required selling specified numbers of new memberships and life insurance policies each month. Failure to meet the new quota resulted in an oral warning, a written warning, probation, and then termination. Plaintiff did not meet the quota in the final months of 1981.

Plaintiff then expressed his interest in the new position of general agent developed by defendant. The general agent position would have permitted plaintiff to establish his own office and to service his own book of business without being subject to the quota system. However, plaintiff eventually turned down the general agent position because of start-up costs, defendant's requirement that he waive any legal action against defendant, his uncertainty of what the job responsibilities were, and his lack of trust of defendant.

After plaintiff turned down the general agent position, he received a letter terminating his employment as a CSR, effective January 15, 1983. The

letter also offered him a job as a member advisor II at a salary of $26,000, which was approximately $6,000 less than his 1982 salary as a CSR.

Despite his reservations about the job, plaintiff accepted the member advisor position, pending notice of the details of defendant's early retirement program. Plaintiff received information of the retirement plan in January 1983, and he chose to retire.

In his complaint, plaintiff alleged breach of contract, age discrimination, unjust enrichment, promissory estoppel, and conversion. The jury awarded plaintiff $300,000 damages for loss of income due to age discrimination and breach of contract, and $500 for mental distress.

I

The dispositive issue on appeal is whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict with respect to plaintiff's claim of age discrimination. Defendant argues that plaintiff failed to establish as a matter of law the disparate treatment theory of age discrimination. Defendant maintains that the production standards were applied equally to all CSRs. Defendant claims that it is inappropriate to prove disparate treatment by comparing the CSRs to the member advisors, because of the differences in the responsibilities of the positions. Plaintiff, on the other hand, states that a reasonable jury could conclude that he was discharged because of his age. We agree with plaintiff.

We examine the testimony and all legitimate inferences that may be drawn in a light most favorable to the plaintiff when reviewing a trial court's failure to grant a defendant's motion for judgment notwithstanding the verdict. *Matras v*

*Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986); *Michigan Microtech, Inc v Federated Publications, Inc,* 187 Mich App 178, 186; 466 NW2d 717 (1991). If reasonable minds could differ concerning whether the plaintiff has met his burden of proof, a judgment notwithstanding the verdict is inappropriate. *Byrne v Schneider's Iron & Metal, Inc,* 190 Mich App 176, 179; 475 NW2d 854 (1991). We will not disturb a trial court's decision on a motion for judgment notwithstanding the verdict absent a clear abuse of discretion. *Michigan Microtech, supra,* pp 186-187.

A prima facie case of age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, can be made by showing either intentional discrimination or disparate treatment. *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981). Because plaintiff attempted at trial to prove disparate treatment, he was required to show that he was a member of a protected class and that he was treated differently than persons of a different class for the same or similar conduct. *Reisman v Wayne State University Regents,* 188 Mich App 526, 538; 470 NW2d 678 (1991). A prima facie case of age discrimination can also be made by showing that plaintiff (1) was a member of the protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by a younger person. *Ewers v Stroh Brewery Co,* 178 Mich App 371, 380; 443 NW2d 504 (1989). Because defendant failed to claim that it was making cutbacks because of economic necessity, plaintiff did not have a greater burden of proof. Compare *Matras, supra,* p 684.

Viewing the evidence in a light most favorable to plaintiff, we find that he established a prima facie case of age discrimination under the *Reisman* standard. Plaintiff was a member of a protected

class, because he was fifty-seven years old when he was discharged. The parties differ regarding whether there was sufficient evidence that plaintiff was treated differently than persons of a different class who were engaged in the same or similar conduct. Defendant argues that plaintiff was treated no differently than other CSRs. Although this might be true, we believe that the member advisors were the comparable group of employees for age discrimination purposes.

First, the average age of the member advisors was more than twelve years less than the average age of the CSRs. Second, the CSRs were treated differently than the member advisors for the same or similar conduct. Although both groups sold insurance and memberships and serviced customers, and the member advisors typically performed the duties of the CSRs when the CSRs left the company, including handling the books of business of the former CSRs, the member advisors, unlike the CSRs, worked regular hours, were paid a salary, and were not required to recruit new customers. Nevertheless, from the similarity of job responsibilities, it may be legitimately inferred that the member advisors and the CSRs were comparable groups for determining whether the CSRs were treated differently for the same or similar conduct.

Evidence was presented at trial that showed that the CSRs were treated differently than the member advisors. Even though the member advisors and the CSRs both sold insurance, the CSRs were subject to a quota and were demoted to member advisor II positions if they failed to meet it. We believe that reasonable minds could differ concerning whether the plaintiff met his burden of proof.

Alternatively, plaintiff met his burden of proof under the *Ewers* standard of a prima facie case of

age discrimination. Plaintiff was a member of a protected class. Plaintiff was discharged (see Issue IV). A reasonable juror could conclude that plaintiff was qualified for the position, having built a considerable book of business.[1] Plaintiff was then replaced by a younger person working as a member advisor.[2] Age might not have been the main reason for plaintiff's discharge, but a reasonable jury could find that age was one of the reasons that made a difference in defendant's determining whether to discharge plaintiff. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for judgment notwithstanding the verdict.

II

Because we find that sufficient evidence was presented at trial to justify sending the age discrimination claim to the jury, we need not address the contract issues raised by defendant. The jury awarded plaintiff damages for loss of income on the basis of age discrimination and breach of contract. Even if we were to find merit in defendant's arguments concerning the breach of contract claim, the age discrimination claim would still support the jury's award of damages for loss of income.

III

We next consider whether the trial court im-

---

[1] We decline to find that plaintiff's failure to meet the discriminatory quota suddenly made him unqualified for the job.

[2] Defendant purports that plaintiff's claim of age discrimination is contradicted by his temporary acceptance of a member advisor position pending defendant's announcement of its early retirement program. Because defendant failed to cite supporting authority for this argument, we decline to review it. *Dafter Twp v Reid,* 159 Mich App 149, 162; 406 NW2d 255 (1987).

properly admitted the testimony of four former employees concerning the circumstances of how each individual was hired by defendant. Defendant moved to exclude the testimony of these four individuals, contending that any testimony about oral statements made to them at their own times of hire was irrelevant because it did not shed light on plaintiff's hiring experience. The trial court summarily denied defendant's motion. Defendant argues on appeal that this testimony was prejudicial, confusing, and misleading regarding the issue whether a contract existed between plaintiff and defendant. We disagree.

The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Reisman, supra,* p 543; *Brunson v E & L Transport Co,* 177 Mich App 95, 104; 441 NW2d 48 (1989). Generally, all relevant evidence is admissible, and irrelevant evidence is inadmissible. MRE 402. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403; *Dunn v Nundkumar,* 186 Mich App 51, 55; 463 NW2d 435 (1990).

In this case, the testimony of the other employees concerning the promises made to them when they were hired, if substantially similar to what plaintiff testified he was promised, would have the tendency to corroborate plaintiff's testimony. See *Schippers v SPX Corp,* 186 Mich App 595, 597; 465 NW2d 34 (1990). Any danger of prejudice in admitting this evidence, because what was promised to these witnesses was not necessarily promised to plaintiff, did not substantially outweigh its probative value. Defense counsel had the opportunity to highlight the differences between plaintiff's hiring experience and those of the other employees by

pointing out that they were hired at different times by different people. Thus, the trial court did not abuse its discretion in admitting the testimony of the four former employees.

## IV

Defendant further contends that the trial court erred in denying its motion for judgment notwithstanding the verdict with respect to plaintiff's claim of constructive discharge. Defendant argues that plaintiff submitted insufficient evidence to establish that defendant made plaintiff's working conditions so intolerable that he was forced to leave the job. Plaintiff responds that the issue was a proper question for the jury. Plaintiff states that the fact that defendant offered and he accepted a lesser job does not preclude the jury from finding constructive discharge. We utilize the standard of review set forth in Issue I.

In *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 796; 369 NW2d 223 (1985), this Court ruled that constructive discharge may be found where working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. A finding of constructive discharge depends on the facts of each case. *Id.*

In *Jenkins,* the plaintiff was told to either accept a new position or resign. The new position not only paid the same salary as plaintiff's former job, but also included a car and an expense account. Nevertheless, this Court held that a reasonable factfinder in that case could find constructive discharge because the new job was not the substantial equivalent of the position from which the plaintiff was discharged. The new position was a

demotion and the job responsibilities were severely reduced.

In the present case, plaintiff was terminated from his position as a CSR and then offered a job as a member advisor. Viewing the evidence again most favorably toward plaintiff, we note that accepting the member advisor position required plaintiff to relinquish his book of business and receive $6,000 less than what he earned the previous year. The member advisor position carried less status than the CSR position. Under these circumstances, a reasonable jury could find that plaintiff was constructively discharged.[3] Moreover, the fact that plaintiff initially accepted the member advisor position for 1½ months does not preclude him from claiming constructive discharge, especially because he accepted the position on a temporary basis so as to take advantage of the early retirement program. After receiving details of the program, he decided to retire. Consequently, the trial court did not abuse its discretion in denying defendant's motion for judgment notwithstanding the verdict against plaintiff's claim of constructive discharge.

V

Turning to the issue before us on cross appeal, we next consider whether the trial court abused its discretion in granting defendant's motion for remittitur. The trial court reduced the jury verdict by $80,000 and ruled that the jury's verdict did not reflect plaintiff's failure to mitigate his dam-

---

[3] Our conclusion is not illogical in light of our decision in Issue I. In Issue I, we compared the job responsibilities of the member advisors with those of the CSRs to determine that the two groups were comparable for age discrimination purposes. In Issue IV, we weigh the different responsibilities of the positions to determine whether a reasonable person would feel compelled to resign.

ages. The trial court determined that plaintiff could have earned wages over the eight-year period before he turned sixty-five years old, and thereby reduced the jury verdict $10,000 for each year.

MCR 2.611(E)(1) authorizes a trial court to reduce a jury verdict when the amount awarded is greater than the highest amount of damages that the evidence at trial would support. A trial court's decision on a motion for remittitur is reviewed for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989); *Byrne, supra*, p 183.

The jury awarded plaintiff $300,000 in lost wages. Unlike the trial court, we find that this amount is not greater than the highest amount of damages that the evidence at trial supported. Plaintiff's expert testified that plaintiff suffered damages in the amount of $696,056. Defendant's expert calculated that plaintiff could have earned $353,188 if he had worked until he reached sixty-five years of age.

Although it is undisputed that plaintiff did not seek employment after leaving defendant's employ, the question whether defendant carried its burden of proving plaintiff was unreasonable in not seeking other employment was within the province of the jury. *Hughes v Park Place Motor Inn, Inc*, 180 Mich App 213, 220; 446 NW2d 885 (1989).

Defendant argues that plaintiff should have accepted either the member advisor II position or the general agent position to mitigate his damages. However, the member advisor position could reasonably be considered a demotion (see Issue IV). Moreover, plaintiff testified that he declined the general agent position because of start-up costs, defendant's requirement that he waive any legal

action against defendant, his uncertainty of what the job responsibilities were, and his lack of trust of defendant at that time. In light of this testimony, we find that a jury could find that plaintiff was reasonable in rejecting defendant's offer of these two positions. *Id.*, p 221. Thus, the trial court abused its discretion in granting defendant's motion for remittitur.

Affirmed in part and reversed in part.