Deborah KROLL, Plaintiff,

v.

The DISNEY STORE, INC., Defendant.

No. 94–CV–75041.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 13, 1995.

Stuart N. Dowty, Pitt, Dowty & McGehee, Royal Oak, MI, for Plaintiff.

Terrence V. Page, Sharon R. Gross, Hardy, Lewis, Pollard & Page, Birmingham, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. Background

This opinion and order grants Defendant's motion for summary judgment. Plaintiff alleges she was constructively discharged from her position as a store manager for The Disney Store (TDS) as a result of discrimination and retaliation in violation of the Elliott–Larsen Civil Rights Act (Elliott–Larsen), M.C.L.A. §§ 37.2102 *et seq.* Specifically, plaintiff argues that because of her pregnancy, TDS made her working conditions intolerable by unfair performance evaluations and unfounded criticism. Jurisdiction is conferred upon this court pursuant to the diversity of citizenship of the parties. 28 U.S.C. § 1332(a)(1).

TDS hired Plaintiff as an assistant store manager in November 1989 and in October 1990 she was promoted to store manager. Plaintiff received three types of feedback on her work performance. Plaintiff occasionally received bonus incentive checks. She regularly received informal comments on her paper work which was reviewed by her district managers. Plaintiff received, in roughly equal proportions, both positive and negative feedback in this form.[1] Finally, Plaintiff received periodic formal, written performance evaluations. In July 1991 district manager John Kasianczuk preformed Plaintiff's first formal performance evaluation after her promotion to store manager. In that evaluation he rated plaintiff "satisfactory," the middle grade on TDS's five point evaluation scale.

In December 1991, Plaintiff informed Kasianczuk that she was pregnant. Kasianczuk responded by asking Plaintiff what her plans were regarding the pregnancy. She informed him that she would later take a maternity leave and return to TDS after the birth of her child. Later in December, when informed by another employee that she was planning on getting married, Kasianczuk "joked" by stating "Oh,—you're not going to go out and get pregnant on us too?"

In January 1992, Kasianczuk gave Plaintiff a second performance review in which he concluded her work had deteriorated over the prior six months. He lowered her performance rating to "needs improvement," the grade between "satisfactory" and "unsatisfactory" on TDS's evaluation scale. In Febru-

---

1. What follows is the name of the form and the notations made on Plaintiff's paper work prior to the announcement of her pregnancy:
   1. June 29, 1991 Statement of Income: "Deb—Looks good!! Stay on it!"
   2. June 30, 1991 Accounting Progress Report: "Deb—Not bad—Let's see '0.'"
   3. July 27, 1991 Statement of Income: "Looking Good Deb—Stay on top of it!"
   4. September 28, 1991 Statement of Income: "Let's get a tighter grip in MOS's;" "Great;" "Looks Good!" "Close."
   5. October 26, 1991 Statement of Income: "Keep eye on box's and bags! Majority of this is new boxes!" "Be careful. Order but don't over do it!"
   6. October 31, 1991 Accounting Progress Report: "Deb—Let's correct this!"
   7. October 1991 HR Progress Report: "Deb—Not bad! Good show!"
   8. November 27, 1991 Missing Documents: "Deb—clean this up! Please!"
   9. November 30, 1991 Accounting Progress Report: "Deb—Nov looks Good!"
   10. November 30, 1991 Statement of Income: "Good;" "Close be careful;" "Looks good;" "Good job."

ary 1992, Plaintiff wrote a rebuttal letter disputing this performance review. She received no response regarding this letter.

Kasianczuk was promoted and replaced by Colleen McClatchey in March 1992. Plaintiff left on maternity leave in June 1992 and returned to work in September 1992. The relationship between Plaintiff and McClatchey was good prior to Plaintiff's maternity leave and for the first month after her return. However, thereafter, Plaintiff believes McClatchey began unfairly picking on her. McClatchey later reprimanded Plaintiff for her work performance in November 1992 and December 1992 and plaintiff resigned in February 1993 after she was informed that her performance evaluation would again be "needs improvement."

## II. *Contentions of the Parties*

Plaintiff contends she was subjected to intentional sex discrimination because of her pregnancy. Plaintiff believes that her pregnancy announcement demarcates a sudden reversal in the character of her treatment and evaluation by TDS. She asserts that district manager Kasianczuk's discriminatory predisposition was evident in his query as to Plaintiff's plans when he learned of her pregnancy and in his joke regarding maternity leaves. She believes that Kasianczuk changed the quality of her evaluation in an effort to force her resignation. Plaintiff also asserts that when she complained of this discrimination, she became the victim of calculated harassment and retaliation. While the district managers had changed by the time of the alleged harassment, Plaintiff argues that district manager McClatchey had been instructed by her predecessor Kasianczuk to treat Plaintiff as an "outcast." Plaintiff concludes that as a consequence of this alleged intentional discrimination and retaliation she was constructively discharged.

Defendant contends that Plaintiff cannot establish a *prima facie* case of intentional discrimination based on pregnancy, retaliation, or constructive discharge. Defendant argues that plaintiff cannot show that either Kasianczuk or McClatchey were predisposed to discriminate based on pregnancy or that either acted on such a predisposition in discharging her. Defendant also contends that Plaintiff fails to show a causal connection between a protected activity, *i.e.*, writing the rebuttal letter to her January 1992 performance evaluation, and the criticism of her performance by her district managers. Finally, Defendant argues, assuming *arguendo* that Plaintiff was the victim of overzealous supervision of her work, this does not constitute objectively intolerable working conditions sufficient to support a constructive discharge claim.

## III. *Analysis*

### A. *Summary Judgment*

█ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56. I apply the federal summary judgment standard as it has been recalibrated by the *Celotex* trilogy.[2] Summary judgment in employment discrimination proceedings is determined on the same basic principles governing all summary disposition motions. Moore's Federal Practice, 2nd Ed., Rule 56, paragraph 56.15[1] and 56.17[20–1]. Because this is a diversity action, I must review and apply Michigan law regarding Plaintiff's claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### B. *Constructive Discharge*

█ Plaintiff claims she was constructively discharged as a result of sex discrimi-

---

**2.** *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (after sufficient time for discovery, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); and *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' ").

nation or retaliation under Elliott–Larsen. I note at the outset of my analysis that constructive discharge from employment is not in itself a cause of action, although it is routinely alleged as a separate count and has been so treated by the parties to this action. *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 487, 516 N.W.2d 102 (1994). Rather, it is a defense against the argument that no action should lie in a specific case because the plaintiff left the job voluntarily. *Id.* There must be an underlying cause of action where constructive discharge is alleged. Therefore, to survive Defendant's motion for summary judgment, Plaintiff must first establish a *prima facie* case of pregnancy discrimination or retaliation. If successful therein, Plaintiff must also present evidence of working conditions so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign. *Jenkins v. Southeastern Michigan Chapter, American Red Cross*, 141 Mich.App. 785, 796, 369 N.W.2d 223 (1985). Plaintiff has failed to make any of these necessary showings.

### C. Intentional Discrimination

■ To establish a *prima facie* case of discrimination under Elliott–Larsen, a plaintiff must show discrimination by either disparate treatment or intentional discrimination. *Wolff v. Automobile Club of Michigan*, 194 Mich.App. 6, 11, 486 N.W.2d 75 (1992). Plaintiff concedes that disparate treatment does not apply in this case. To establish intentional discrimination, Plaintiff must show that she was constructively discharged by someone acting on a predisposition to discriminate based on pregnancy. *Hickman v. W–S Equipment Co., Inc*, 176 MichApp. 17, 20–21, 438 N.W.2d 872 (1989).

■ Plaintiff has provided absolutely no evidence or argument that district manager McClatchey harbored a discriminatory predisposition regarding persons either pregnant or having taken a maternity leave. She does argue that a discriminatory predisposition is evident in the comments of district manager Kasianczuk and that this discriminatory predisposition was manifested in the subsequent change in her evaluations. I dis-

agree. Kasianczuk's question as to Plaintiff's plans when he learned of her pregnancy only makes good business sense and cannot possibly serve as evidence of a discriminatory predisposition. A person running a business must know when his or her employees will not be available and for how long. This is the only direct comment that Plaintiff presents to establish Defendant's discriminatory predisposition. Kasianczuk continued to supervise Plaintiff for more than two months after her announcement, and while kibitzing with her regarding his wife's pregnancy, no other negative comments were made to Plaintiff.

Kasianczuk did make a joke regarding maternity leaves to another TDS employee. It is noteworthy that this woman, the person to whom the comment was directed, stated in her deposition that she did not find the joke offensive herself. The joke appears to have been nothing more than an expression of some exasperation regarding staffing problems.

Plaintiff also argues that Kasianczuk's discriminatory attitude manifested itself in her informal and formal performance reviews. However, my review of the evidence shows that Plaintiff's informal feedback was inconsistent *before* her pregnancy announcement.[3] In Plaintiff's first review, she was rated "satisfactory," the middle rating in a five-point scale (outstanding, commendable, satisfactory, needs improvement, and unsatisfactory). In her second review, Plaintiff was rated "needs improvement." Plaintiff argues that this decline was prompted by her pregnancy announcement, not with any additional problems with her work. However, Plaintiff has not presented any evidence that her performance evaluation was adjusted because of her pregnancy.

I first note that Plaintiff's formal evaluation as a store manager dropped only one step and that her first evaluation was just average. If one goes back to Plaintiff's last formal performance review as an assistant manager, in which she was graded "commendable," it is apparent that Plaintiff's evaluation had declined prior to the pregnancy

**3.** See footnote 1.

announcement. Moreover, in reviewing her two formal performance reviews, the concerns expressed are consistent. In both reports Plaintiff was encouraged to communicate better with her employees, to be less passive and more proactive, to develop loss prevention awareness, and to better express her needs with the district manager. Kasianczuk did not simply fabricate faults as a pretext to force Plaintiff's resignation. I also note that in his second performance review, Kasianczuk wrote "Deb, I know you can do it, just dedicate yourself to what's right!", an apparent attempt to encourage Plaintiff to succeed in her work for TDS. Finally, Defendant has presented evidence that Kasianczuk supervised other pregnant women and women on maternity leave and that these women received "commendable" and "exceeds expectations" performance ratings.

### D. *Retaliation*

██ To establish a *prima facie* case of retaliation under Elliott–Larsen, Plaintiff must show that (1) she was engaged in a protected activity; (2) she was the subject of adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987). Participation in activities protected by Elliott–Larsen must be a "significant factor" leading to the complaining employee's discharge. *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 198 (6th Cir.1986).

██ Defendant does not challenge Plaintiff's right to dispute her performance review. However, as provided above, there was no adverse employment action unless disappointing performance evaluations are so considered. Weaker still is Plaintiff's evidence of a causal link between her rebuttal letter challenging her second performance review and the criticism of her work. Plaintiff alleged no further problems with Kasianczuk during the month after the letter was written and Kasianczuk's departure in March 1992. Moreover, Plaintiff admittedly had a good relationship with his replacement up until her maternity leave and for a month after her return. It was only in October 1992, roughly eight months after the rebuttal

letter was written, that conflict arose between Plaintiff and district manager McClatchey. While Plaintiff deems this conflict retribution for her letter, the evidence suggests it is the consequence of a distracted or disinterested employee failing to perform. Plaintiff does not contest many of the problems identified by McClatchey—for example, store dirty, lockbox left unlocked, and incomplete hiring. It is also difficult to believe that McClatchey would wait so long to retaliate for a letter that did not implicate her in any way. I fail to find any evidence to support the claim that district manager Kasianczuk instructed and succeeded in having McClatchey treat Plaintiff as an outcast.

### *Conclusion*

As provided above, constructive discharge is not a separate cause of action itself and Plaintiff must establish a *prima facie* case for an underlying cause of action. Plaintiff has failed in this endeavor. Clearly Plaintiff received negative performance reviews and also received direct criticism from her supervisors. However, I do not find any merit in Plaintiff's claims of discrimination and retaliation. In particular, there are no material questions of fact regarding Plaintiff's claims. Accordingly, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.