*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY CHEMA,

Plaintiff-Appellant,

v

MICHIGAN CANCER SPECIALISTS PLC,

Defendant-Appellee.

UNPUBLISHED
February 26, 2019

No. 340013
Macomb Circuit Court
LC No. 2015-000775-CD

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Plaintiff appeals by right an order granting defendant judgment notwithstanding the verdict ("JNOV") in plaintiff's action alleging age discrimination under the Elliott-Larsen Civil Rights Act ("CRA"), MCL 37.2101 *et seq*. We reverse.

## I. BASIC FACTS

Plaintiff filed a one-count complaint of age discrimination against defendant. Defendant was a small medical practice and plaintiff worked in its billing department since 1991. Plaintiff had a positive working relationship with defendant's de facto office manager Margaret Agnone, the wife of Dr. Eugene Agnone. Drs. Agnone and Adli Yakan co-owned defendant. By all accounts, plaintiff was an extremely competent employee and valued by defendant. Plaintiff acknowledged that she enjoyed a generous salary and many fringe benefits.

Plaintiff testified that everything changed in June 2014 when defendant hired Stacey Wilson to be the office manager. Margaret had indicated a desire to spend less time at the office. Additionally, as a result of the Affordable Care Act, defendant needed to make a number of changes and adjustments to its practice. To that end, defendant hired Wilson to help manage the practice. During one of their initial conversations, Wilson asked plaintiff if plaintiff had thought about retiring. Plaintiff, who was 63 years old at the time, indicated that she had no intention of retiring because she needed to work until age 66 to get full Social Security benefits.

On October 6, 2014, plaintiff had her first evaluation with Wilson. The written evaluation considered 10 different categories of performance. There were four possible ratings –

very effective, effective, somewhat effective, and ineffective. Plaintiff believed "somewhat effective" and "ineffective" were both below average ratings. Plaintiff received below average ratings in four categories that included: (1) taking action; (2) valuing diversity and respecting others; (3) teaching and learning; and, (4) and taking responsibility. However, Wilson could not provide plaintiff with concrete examples of how plaintiff fell short in those areas. The written evaluation was silent on an "overall performance" rating but Wilson told plaintiff that Wilson would have given plaintiff an "underperformed expectations" rating.

In addition to the written evaluation, it was at this October 6, 2014, meeting that Wilson notified plaintiff that plaintiff would not be getting any more raises. Wilson expressed shock at how much money plaintiff earned. Wilson told plaintiff "no" to an annual raise and that plaintiff was "maxed out." There would be no future raises.

The October 6, 2014, meeting also involved discussions regarding plaintiff's hours and overtime. Plaintiff previously came to work early – approximately 6:30 a.m. – and would leave at 3:30. Wilson required plaintiff to change her start time, first to 7:00 a.m. and then, later, to 7:30 a.m. Employees used to have actual punch cards, but once Wilson arrived, they utilized a "cloud" system and an employee would be considered on the clock as soon as she logged into her work station. At the October 6, 2014, meeting, Wilson warned plaintiff that plaintiff had unauthorized overtime. Plaintiff explained that she came to work early because the distance from Rochester to Roseville was significant and plaintiff would rather be early than be late because of traffic. Plaintiff asked whether Wilson could do something with the new system such that plaintiff's start time would be 7:30, regardless of when she actually logged in. Plaintiff did not expect to receive overtime pay.

At the October 6, 2014, meeting, Wilson and plaintiff also discussed plaintiff's fringe benefits. Wilson told plaintiff that plaintiff would receive two sick days, three personal days, and 10 vacation days. Plaintiff attempted to correct Wilson and drew her attention to the fact that she had much more vacation time than that. Wilson said "no, this is what it is." Wilson demanded that plaintiff sign a sheet indicating that they talked about days off but that Wilson said she would look into the matter further. Plaintiff was crying and upset over the evaluation and the changes to her salary and benefits. She testified that, at the October 6, 2014, meeting, Wilson "said maybe you're getting a little bit too old for this job and it's time to retire."

Two days after that evaluation, on October 8, 2014, plaintiff received a written warning from Wilson for "carelessness" regarding a patient's care. Plaintiff explained that there was confusion about what transpired. Plaintiff believed that one of the chemo nurses asked her to verify that a patient could receive an IV infusion of anti-nausea drugs at the time he received his chemo infusion. In fact, the nurse wanted to know whether prescription oral medication was a covered benefit. Plaintiff told the nurse that she could not verify coverage because Yakan had not written a prescription.

A week later, on October 15, 2014, Wilson called plaintiff into her office and advised plaintiff that she was going to receive three written warnings that day. Wilson told plaintiff that the first warning was for insubordination and violation of the anti-harassment policy. Plaintiff explained that Wilson got into an argument with one of the chemo nurses, Theresa Evaldi. While the two of them were arguing in the hallway, Wilson stuck her head in the office where

plaintiff was working and asked whether she knew where Margaret was. Plaintiff turned from her computer and said, "no, I don't." Wilson asked plaintiff a second time where Margaret was and plaintiff again said, "I don't know where Margaret is." Plaintiff noted that there were two other employees in the room at the time. Both of these individuals were substantially younger than plaintiff. Plaintiff felt she had done nothing wrong, yet Wilson recommended that defendant seek legal counsel regarding plaintiff's "harassment and insubordination."

The second warning discussed at the October 15, 2014, meeting was based on plaintiff's alleged behavior toward Leslie Killop, an individual that plaintiff was tasked with training. The written warning indicated that plaintiff swore at Killop, was rude, and was unwilling to assist Killop with training questions. Again, plaintiff disputed Wilson's version of events. Plaintiff explained that she had reminded Killop to make copies of hospital lists for the chemo nurses. Killop snapped at her that plaintiff never told her that before. Plaintiff responded that she had told Killop that many times. Plaintiff believed Killop was doing a great job, but that she kept forgetting to make copies of the hospital lists for the nurses. Killop refused to talk to plaintiff for the rest of the day. The next morning, Killop arrived at work and threw down her belongings. Plaintiff denied asking Killop what Killop was "pissed" about. Instead, plaintiff asked Killop whether she was having problems at home or problems at work that would have placed her in a bad mood. Plaintiff expressed dismay that she would receive a write-up for the interaction. Plaintiff told Wilson that there were plenty of times that she could have complained about co-workers, but was under the impression that such things should be handled by the employees themselves.

The third warning plaintiff received on October 15, 2014, was for unapproved overtime. Plaintiff thought that Wilson had set her time to punch in at 7:30 a.m. regardless of her arrival time.

After receiving the three consecutive warnings, plaintiff was once again crying and upset. At that point, Wilson told plaintiff that if plaintiff received one more write-up she would be fired. Wilson told plaintiff that "it's better if you retire now than get fired." Wilson resigned immediately following the meeting with Wilson. Wilson told plaintiff "now I can hire people that are younger and cheaper than you." Plaintiff rejected defendant's January 2016 offer of reinstatement.

The jury returned a verdict in plaintiff's favor. The jury concluded that plaintiff proved by a preponderance of the evidence that plaintiff's working conditions at defendant were so intolerable that she was forced to resign and that defendant caused intolerable working conditions for plaintiff because of her age. The jury concluded that plaintiff was not unreasonable in rejecting the unconditional offer of reinstatement. It awarded plaintiff $141,416.50 in past and future wage loss and fringe benefits and $33,583.50 for past and future emotional distress.

However, as will be discussed in greater detail below, the trial court granted defendant's motion for JNOV in a written opinion and order dated August 24, 2017, finding that plaintiff failed to establish an adverse employment action as a matter of law and that, without an adverse employment action, plaintiff could not sustain a claim for constructive discharge.

Plaintiff now appeals by right.

## II. JNOV

An appellate court "reviews de novo a trial court's decisions regarding motions for JNOV. The appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016) (footnotes and quotation marks omitted). In the context of the CRA, this Court must determine whether plaintiff presented sufficient evidence to support a jury verdict finding employment discrimination. *Id*. at 605. "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. at 605-606.

The CRA provides:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . .age . . . [MCL 37.2202(1)(a).]

In order to establish a claim under the CRA, a plaintiff must establish that she suffered an adverse employment action." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009). "The ultimate question in an employment discrimination case is whether the plaintiff was the victim of intentional discrimination." *Hecht*, 499 Mich at 606.

In granting defendant JNOV, the trial court's legal analysis was flawed. The trial court first cited the "burden-shifting" approach *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973) as adopted by *Lytle v Malady*, 458 Mich 153, 172; 579 NW2d 906 (1998). It noted that in order to demonstrate a rebuttable prima facie case of discrimination, plaintiff had to prove: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) she was qualified for her position; and (4) suffered the adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Defendant could then articulate a non-discriminatory reason for the adverse employment action, requiring plaintiff to demonstrate that the reason was pretext for discrimination.

However, the *McDonnell-Douglas* burden-shifting approach does not apply in situations where there is direct evidence of discriminatory animus. *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 540; 620 NW2d 836 (2001) ("shifting burden of proofs as contemplated in *McDonnell Douglas* . . . only apply to discrimination claims based solely on indirect or circumstantial evidence of discrimination" and when direct evidence is offered to prove discrimination the case proceeds as an ordinary civil matter). "There are multiple ways to prove that a plaintiff was the victim of unlawful discrimination. Direct evidence of intentional discrimination is a sure but rare method of challenging an employer's decision." *Hecht*, 499 Mich at 607. "Perhaps the best *general* definition of direct evidence is that it is evidence that proves impermissible discriminatory bias without additional inference or presumption." *Id*. at 608 n 34. For example, this can be accomplished when a decision-maker tells an employee at a

meeting in which the employee suffers an adverse employment action that the employee is "getting *too old* for this . . ." *Id*., quoting *DeBrow,* 463 Mich at 538. Here, plaintiff testified that Wilson specifically commented on her age and need to retire. Therefore, the trial court's reference to the burden-shifting approach was unnecessary.

Regardless, the trial court then correctly noted that, in order to maintain a claim under the CRA, plaintiff had to demonstrate that she suffered an adverse employment action. *Wilcoxon v Minnesota Min & Mfg Co*, 235 Mich App 347, 362; 597 NW2d 250 (1999). "[I]n order for an employment action to be adverse for purposes of a discrimination action, (1) the action must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities and (2) there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling." *Id*. at 364 (quotation marks and citation omitted). "Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Pena v Ingham Co Rd Comm'n*, 255 Mich App 299, 312; 660 NW2d 351 (2003).

In finding that plaintiff's proofs fell short of demonstrating an adverse employment action, the trial court made the following observation:

> In the case at bar, to support her argument that she suffered an adverse employment action, plaintiff relies on a poor performance review by Wilson, an October 6, 2014 meeting in which she alleges that Wilson told her that she would not receive a raise in the future, an alleged reduction in plaintiffs sick leave and vacation time and an allegation that Wilson told plaintiff that she should retire and that she is too old for the job. Next, plaintiff contends that she received a written warning for the first time in her career on October 8, 2014, and another warning on October 15, 2014. However, none of these employment actions noted by plaintiff are adverse employment actions akin to "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Furthermore, it is undisputed that Wilson lacked the authority to fire plaintiff. Importantly, plaintiff and the owners testified that the owners of the company, who possessed firing authority, told plaintiff that her job was "secure." Considering the aforementioned facts, even when reviewing this matter in the light most favorable to plaintiff, plaintiff clearly failed to establish an adverse employment action as a matter of law.

There are a number of errors with the trial court's assessment. First, at no time did plaintiff claim that she suffered an adverse employment action because of the performance review or written warning. Instead, plaintiff claimed that the adverse employment action was her constructive discharge. Second, presumably because the trial court was operating under the wrong legal framework, the trial court glosses over the fact that Wilson *told plaintiff she was too old for the job*. Whether Wilson was a "decision-maker" is a factor to consider only if defendant

-5-

argues that the statements were "stray remarks." *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 136 n 8; 666 NW2d 186 (2003). Defendant could not and did not claim that Wilson's remarks were stray remarks; instead, defendant claimed Wilson never made the statements. Finally, the trial court makes a factual finding that plaintiff was reassured that her job was secure. However, there was conflicting testimony about when Dr. Yakan made that statement and in what context. In short, the trial court failed to take the evidence in a light most favorable to the non-moving party.

The trial court rejected plaintiff's claim that she was constructively discharged:

> [P]laintiff's contention is without merit because 'constructive discharge is not in itself a cause of action.' *Vagts v Perry Drug Stores, Inc*, 204 Mich App 481, 487; 516 NW2d 102 (1994). "Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily." *Id*. "Thus, an underlying cause of action is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged." *Id*. In the present case, plaintiff's underlying cause of action was age discrimination.

> Constructive discharge "is established where 'an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.'" *Vagts*, 204 Mich App at 487, quoting *Mourad v Automobile Club Ins Ass'n*, 186 Mich App 715, 721; 465 NW2d 395 (1991). If constructive discharge is established, the employee is treated as if he or she had actually been discharged. *Jacobson v Parda Fed Credit Union*, 457 Mich 318, 328; 577 NW2d 881 (1998). Constructive discharge demands an objective standard of reasonableness. *Jacobson*, 457 Mich at 328.

The trial court correctly stated the law but then failed to properly apply it. The trial court concluded:

> In the case at bar, plaintiff has clearly failed to establish an adverse employment action. Without an adverse employment action, plaintiff cannot sustain a claim for constructive discharge. *Chen*, 284 Mich App at 201. In sum, the evidence in this case was insufficient for a reasonable person to find that plaintiff suffered an adverse employment action. The only evidence plaintiff claims amounts to age discrimination was her testimony that on two occasions Wilson stated to plaintiff to the effect, "maybe you're getting a little bit too old for this job and it's time to retire." However, the evidence showed from June 2014 to the date she resigned, October 15, 2014, that plaintiff earned the same salary, had the same paid-time off, and possessed the same job duties. The same is true regarding the evaluation in which Wilson indicated plaintiff needed to improve in four performance measures, and was either satisfactory or excelled in the six remaining performance categories. This also applies to the four written warnings of alleged inadequate performance, one on October 8, 2014, and three

on October 15, 2014. Plaintiff also relied on her subjective feelings of how she was treated by Margaret Agnone and another employee, Leslie [Killop]. At a minimum, plaintiff must point to a tangible adverse employment action that she suffered or was in jeopardy of suffering because of the evaluation or warnings. However, plaintiff has clearly failed to meet her burden. Consequently, defendant's motion for judgment notwithstanding the verdict must be granted.

It is true that *Vagts* stands for the proposition that constructive discharge is not a cause of action. Instead, it is a defense against the argument that a plaintiff cannot sue because she voluntarily quit her job:

> [C]onstructive discharge is not in itself a cause of action, although it is routinely alleged as a separate count in complaints for wrongful discharge. Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily. Thus, an underlying cause of action is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged. [*Vagts*, 204 Mich App at 487 (citations omitted).]

But *Vagts* did not serve as a proper basis for granting defendant JNOV in this case.

The *Vagts* Court concluded that there was no statutory basis for the plaintiff's cause of action and no basis for bringing public policy claims. In essence, the Court concluded that the plaintiff failed to state a claim. That is not the case here where plaintiff relies on the CRA in her one-count complaint for age discrimination. The CRA, recognizing freedom from discrimination because of age, prohibits discrimination because of age in employment. MCL 37.2202(1)(a). In a case involving the Whistleblower Protection Act ("WPA"), MCL 15.361 *et seq*., our Supreme Court observed that while constructive discharge is not, itself, a cause of action, "discharge is among the retaliatory actions prohibited by the [WPA]. Plaintiff alleged she was constructively discharged. The actual posturing of her claim, accordingly, is one of discharge in violation of the act." *Jacobson v Parda Fed Credit Union*, 457 Mich 318, 321 n 9; 577 NW2d 881, 882 (1998), rev'd on other grounds *Joliet v Pitoniak*, 475 Mich 30; 715 NW2d 60 (2006). The same is true here. Plaintiff alleges that she was constructively discharged as a result of age discrimination in violation of the CRA. Therefore, plaintiff's complaint contained a proper underlying cause of action and *Vagts* was not an impediment.

As the trial court seemed to acknowledge, constructive discharge is the equivalent of being fired. "It is well established that the law does not differentiate between employees who are actually discharged and those who are constructively discharged. In other words, once individuals establish their constructive discharge, they are treated as if their employer had actually fired them." *Champion v Nationwide Sec, Inc*, 450 Mich 702, 710; 545 NW2d 596 (1996), rev'd on other grounds *Hamed v Wayne Co*, 490 Mich 1; 803 NW2d 237 (2011). The CRA prohibits an employer from discharging an employee based on age.

Having concluded that constructive discharge is the legal equivalence of being fired, the issue becomes whether the jury could have found that defendant, in fact, constructively discharged plaintiff. "Constructive discharge requires inquiry into the intent of the employer and

-7-

the reasonably foreseeable impact of the employer's conduct on the employee." *Jenkins v SE Michigan Chapter, American Red Cross*, 141 Mich App 785, 796; 369 NW2d 223 (1985). "An employer is held to intend the reasonably foreseeable consequences of his conduct." *Id*. "A constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151; 483 NW2d 652, 654 (1992), quoting *Mourad v Auto Club Ins Ass'n,* 186 Mich App 715, 721, 465 NW2d 395 (1991). "[O]r, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." *Mourad*, 186 Mich App at 721. "A finding of constructive discharge depends on the facts of each case." *Wolff v Auto Club of Michigan*, 194 Mich App 6, 15; 486 NW2d 75 (1992).

Because it is a fact-based inquiry, whether a plaintiff has been constructively discharged is an issue for the jury to decide. See *Manning v City of Hazel Park*, 202 Mich App 685, 698; 509 NW2d 874 (1993). As previously stated, in the context of a JNOV, this Court "is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party" and "[o]nly if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Hecht*, 499 Mich at 604. In the context of the CRA, this Court must determine whether plaintiff presented sufficient evidence to support a jury verdict finding employment discrimination. *Id*. at 605. "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. at 605-606.

Plaintiff presented evidence from which a reasonable jury could conclude she was discriminated against because of her age. Plaintiff testified that Wilson made repeated comments about plaintiff's age and the need for her to retire. Additionally, over the span of just a few days, plaintiff received a negative performance review, was issued numerous warnings, and was threatened with termination if another warning occurred. A jury could conclude that defendant created working conditions so intolerable that a reasonable person in plaintiff's shoes would have felt compelled to resign. In granting defendant JNOV, the trial court substituted its opinion for that of the jury, applied erroneous legal principles, and required plaintiff to jump through non-existent temporal requirements by first demonstrating an adverse employment action before demonstrating constructive discharge when those issues were necessarily intertwined.

## III. JURY INSTRUCTIONS

Defendant argues that, in the event this Court reverses on the issue of JNOV, a new trial is warranted due to instructional errors. We disagree.

"We review a trial court's decision regarding jury instructions for an abuse of discretion." *Alfieri v Bertorelli*, 295 Mich App 189, 196; 813 NW2d 772 (2012). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

"[J]ury instructions must be reviewed as a whole, rather than extracted piecemeal to establish error in isolated portions." *Hill v Sacka*, 256 Mich App 443, 457; 666 NW2d 282 (2003) (internal quotation marks omitted). "There is no error requiring reversal if, on balance, the theories of the parties and the applicable law were adequately and fairly presented to the

jury." *Id*. at 457–458. Reversal is not required unless failing to do so would be "inconsistent with substantial justice." MCR 2.613(A).

The trial court gave the following instruction, which was a modification of model instructions M Civ JI 105.02 and M Civ JI 105.04:

Plaintiff must prove that she was discriminated against because of age. The discrimination must have been intentional. It cannot have occurred by accident. Intentional discrimination means that one of the motives or reason for plaintiff constructive discharge was her age. Age does not have to be the only reason, or even the main reason. It means that age was the "but for" cause of the Plaintiff constructive discharge.

Another formulation would be that age was a determining factor [and] the constructive discharge would not have occurred without age discrimination.

* * *

Plaintiff has the burden of proving that defendant constructively discharged the Plaintiff, and were it not for age discrimination plaintiff would not have been constructively discharged.

Your verdict will be for the plaintiff if you find that the Defendant constructively discharged the Plaintiff and that were it not for age discrimination, [P]laintiff would not have been constructively discharged. Age does not have to be the only reason or the main reason. It means that age was the "but for" cause in plaintiff constructive discharge.

* * *

Your verdict will be for the defendant if you find the Defendant did not constructively discharge the Plaintiff. Your verdict will also be for the defendant if you find that the Defendant did constructively discharge the Plaintiff, but that age was not the "but for" reason for the constructive discharge.

Defendant claims that the trial court's instructions were confusing and failed to reflect the Michigan Supreme Court's decision in *Hecht*. The *Hecht* Court held: "In our caselaw, we have interpreted the CRA to require 'but for causation' or 'causation in fact.' We reaffirm that construction here." *Hecht*, 499 Mich at 606 (footnote and quotation marks omitted). The Court cited *Matras v Amoco Oil Co,* 424 Mich 675, 682; 385 NW2d 586 (1986). *Hecht*, 499 Mich 606 n 32. The *Matras* Court held:

A jury can find that the discharge was "because of age" even if age was not the sole factor. As accurately expressed in the Michigan Standard Jury Instruction, "[age] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [discharge] the plaintiff." Another formulation would be that age is a determining factor when the unlawful adverse action would not have

-9-

occurred without age discrimination. Alternative expressions of the determining factor concept are "but for causation" or "causation in fact."

In the instant case, the question therefore becomes whether there was sufficient evidence, when the evidence and inferences therefrom are viewed in a light most favorable to Matras, for reasonable jurors to conclude that age discrimination was a determining factor in the decision to discharge him. [*Matras*, 424 Mich at 682–683 (footnote omitted).]

The trial court's instructions were in keeping with the model instructions and *Hecht*. We find no error in the instructions, which adequately set forth plaintiff's burden of proof.

Reversed and remanded with instructions that the jury's verdict be reinstated. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica